IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUMITOMO PHARMA SWITZERLAND GMBH, SUMITOMO PHARMA AMERICA, INC., SUMITOMO PHARMA CO., LTD., TAKEDA PHARMACEUTICAL COMPANY LIMITED, TAKEDA PHARMACEUTICALS INTERNATIONAL AG, and PFIZER INC., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 25-311 (MN) CONSOLIDATED |
| v. | ) ) | |
| APOTEX INC., APOTEX CORP., BDR PHARMACEUTICALS INTERNATIONAL PVT. LTD., and BDR LIFESCIENCES PVT. LTD., | ) ) ) ) ) | |
| Defendants. | ) | |
| SUMITOMO PHARMA SWITZERLAND GMBH, SUMITOMO PHARMA AMERICA, INC., SUMITOMO PHARMA CO., LTD., TAKEDA PHARMACEUTICAL COMPANY LIMITED, TAKEDA PHARMACEUTICALS INTERNATIONAL AG, and PFIZER INC., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 25-380 (MN) |
| ANNORA PHARMA PRIVATE LIMITED, HETERO LABS LIMITED, and HETERO USA, INC., | ) ) ) ) | |
| Defendants. | ) | |

**AGREEMENT REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND ORDER**

The following Agreement regarding Discovery of Electronically Stored Information and

Hard Copy Documents ("ESI Protocol" or "Protocol") shall apply to all discovery of electronically

stored information ("ESI") and hard copy documents in the above-captioned actions (the

"Actions"), involving Plaintiffs Sumitomo Pharma Switzerland GmbH ("SMPS"), Sumitomo Pharma America, Inc. ("SMPA"), Sumitomo Pharma Co. Ltd. ("SMP"), Takeda Pharmaceutical Company Limited ("Takeda"), Takeda Pharmaceuticals International AG ("Takeda International"), and Pfizer Inc. ("Pfizer") (collectively, "Plaintiffs"), and Defendants Apotex Inc., Apotex Corp. (together, "Apotex"), BDR Pharmaceuticals International Pvt. Ltd., and BDR Lifesciences Pvt. (together, "BDR," and together with Apotex, "Apotex/BDR"); Cipla Limited and Cipla USA, Inc. (together, "Cipla"); Aizant Drug Research Solutions Private Limited ("Aizant"); Annora Pharma Private Limited, Hetero Labs Limited, Hetero Labs Limited Unit-V, and Hetero USA, Inc. ("Hetero"); MSN Laboratories Pvt. Ltd., and MSN Pharmaceuticals, Inc. ("MSN"); and Sandoz Inc. (collectively, "Defendants") (Plaintiffs and Defendants may collectively be referred to as the "Parties"). Nothing in this Protocol shall limit a Party's right to seek or object to discovery as set out in applicable rules, to rely on any protective order entered in this action concerning the protection of confidential or otherwise sensitive information, or to object to the authenticity or admissibility of any ESI or hard copy document produced in accordance with this Protocol. To expedite the exchange of ESI and hard copy documents in these Actions, pursuant to this Court's authority and with the consent of the Parties,

**IT IS HEREBY ORDERED:**

1. **General Provisions**

    a. **Cooperation**. Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P.26-36. In the event that the Parties are unable to agree on the parameters and/or timing of discovery, the following standards in this ESI Protocol shall apply until further order of the Court or the Parties reach agreement.

2

b.    **Proportionality**.    Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1]   This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery, and other parameters to limit and guide preservation and discovery issues.

c.    **Preservation of Discoverable Information**.  A Party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

(i)    Absent a showing of good cause by the requesting Party, the Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

(ii)    Absent a showing of good cause by the requesting Party, the categories of ESI identified in Schedule A attached hereto need not be preserved, collected, or produced.

d.    **Privilege.**

(i)    The terms of Paragraphs 21 and 25 of the Protective Order governing the production of privileged information govern this Order as well.

(ii)    <u>Privilege Logs</u>.  Within a reasonable time after the deadline for substantial completion of document production, the parties will confer regarding whether an exchange of logs identifying documents or information withheld as privileged is warranted.  If an exchange is

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

warranted, the parties will confer regarding the timing for such an exchange and the format and content of any such logs.

   (iii) <u>Privileged Documents That Need Not Be Logged</u>.  The Parties agree that with respect to privileged communications and information generated after January 29, 2025, Parties are not required to include any such information in privilege logs, unless otherwise agreed upon by the Parties.

   (iv) <u>Preservation of Privileged Materials</u>.  Notwithstanding the above, all privileged material should be preserved in the event of a later dispute with respect to the propriety of any privilege claim.

   (v) <u>Preservation Activities Are Privileged</u>.  Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

   (vi) <u>Logging of Redactions</u>.

    (1) <u>Generally</u>.  Partially privileged documents produced in redacted form need not be identified individually on a privilege log.  Instead, the producing Party may provide a metadata field setting forth the redaction reason(s), or may clearly label and include the reason for the redaction directly on the TIFF image, as set forth in paragraph 2(q).

    (2) <u>Alternatively</u>.  Upon a showing of good cause (*e.g.*, that the sender, recipients, or nature of the privilege cannot be ascertained), the Receiving Party may request that the Producing Party log a redacted document.  The Parties agree to meet and confer regarding any

redacted documents where the receiving Party requires additional information in order to assess the privilege claim.

e.    **Foreign Language Documents**.  If any party intends to affirmatively rely on a foreign language document at any time, including during fact discovery, expert discovery, or at trial, that party will produce a certified translation of the document along with the original.  If any party intends to affirmatively rely on a foreign language document during a deposition or at trial, at least forty-eight (48) hours prior to citing or relying upon the foreign language document, that party shall provide written notice to the other parties of its intent to rely upon the foreign language document and, no later than the time of the written notice, produce a certified translation of the document along with the original.

2.    **Specific E-Discovery Issues.**

a.    **On-site inspection of electronic media**.  Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

b.    **Search methodology**.

(i)    <u>General</u>.  Producing Parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own ESI.  As such, the Producing Party shall retain the sole right and responsibility to manage and control searches of its data so long as such searches meet the standard of care promulgated in Fed. R. Civ. P. 26(g) including any additional search terms identified in conformity with paragraph 2(b)(iv). Nothing in this provision shall prevent the Requesting Party from identifying "10 additional terms" as contemplated in paragraph 5 of the District of Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI").

(ii)    <u>Withholding ESI</u>. The fact that any ESI has been identified in agreed-upon searches shall not prevent the Producing Party from withholding such file from production on the grounds that the file is not responsive, that it is protected from disclosure by an applicable privilege or immunity, that it is governed by and protected from disclosure by any applicable privacy law or regulation, or that the Protective Order entered in this Action allows the file to be withheld.

(iii)    <u>Appropriateness of Methodology</u>. The Producing Party shall consider in good faith whether the application of search terms and/or technology-assisted review is appropriate for certain sources of ESI such as targeted collection of departmental files or database exports. In the event Plaintiffs elect not to use search terms and/or technology-assisted review, then the Defendants shall not be required to comply with the search term disclosure provisions of section 2.b.iv. below.

(iv)    <u>Search Terms</u>. If the Producing Party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the Requesting Party within thirty (30) days after receiving the first set of Requests for Production from the Requesting Party. Absent a showing of good cause, a Requesting Party may request no more than 10 additional terms to be used in connection with the electronic search within seven (7) days thereafter. All requests for additional terms must be made by October 23, 2025. Focused terms, rather than over-broad terms (*e.g.*, product and company names), shall be employed. For the sake of clarity and as an example, however, product and company names may be used within a focused term (*e.g.*, with the use of connectors such as "and," "or," "w/#," etc.), as long as the complete term is not over-broad. The Producing Party shall search (i) the non-custodial data sources identified in accordance with each Party's initial disclosures; and (ii) emails and other ESI maintained by the custodians identified in accordance with each Party's initial disclosures. If the Parties are unable to resolve their disputes

over the Requesting Party's additional search terms through the meet and confer process, the Parties will submit the dispute to the Court.

      c.      **Deduplication of Production**.

      (i)      <u>General</u>.  The Parties shall use reasonable, good faith efforts to avoid the production of "Duplicate ESI." "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values.

      (ii)      <u>Global Deduplication</u>.  The Producing Party shall take reasonable steps to de-duplicate ESI globally (*i.e.*, both within a particular custodian's files and across all custodians).[2]

      (iii)      <u>Identical MD5 Hash</u>.  To permit deduplication, hash values (MD5 Hash) must be identical.  Deduplication shall not break apart families and shall be performed at a family level.

      (iv)      <u>Single Production Copy</u>.  When exact duplicate standalone documents or families of documents exist, the Producing Party need only produce a single copy of a responsive document or family ("Single Production Copy").  The Single Production Copy shall be produced with the metadata set forth in paragraph 2(k).  The Producing Party shall also populate the Custodians field to identify each custodian who had a copy of the Duplicate ESI.

      (v)      <u>No Manual Review</u>.  No Party shall identify and/or eliminate electronic duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.

---

[2] There may be non-custodial data sources that cannot be globally deduped or for which global deduplication is not appropriate.

**d.    Email Threading.**

(i)    <u>Email Threading</u>.  In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize commercially available "email thread suppression" tools, provided, however, that such deduplication does not exclude from production any responsive attachments to each email in the chain and that family relationship data is provided consistent with the requirements of this Order.

**e.    Production Format for ESI and non-ESI**.

(i)    <u>Generally</u>.  Unless the Parties mutually agree to produce documents in an alternative format for certain document types, ESI and non-ESI shall be produced to the Requesting Party as text searchable image files.  When a text-searchable image file is produced, the Producing Party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.  The Parties shall produce their information in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata as identified in paragraph 2(k). Productions of ESI and hardcopy documents in the reasonably usable form set out in this protocol need not be organized and labeled to correspond to the categories in document requests.  All productions will include these additional specifications:

(1)    Document-level .txt files.  The .txt file shall contain the extracted full text of the original document if available.  OCR text shall be provided instead if extracted text is not available or if the document has been redacted.  For scanned images of hard copy documents, OCR should be performed on a document level and provided in

document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

Bates number branding and Confidentiality designation (if any) on the face of the image.

(2) The Bates number shall be a unique, consistently formatted identifier and:

a.    be consistent across the production;

b.    contain no special characters;

c.    be numerically sequential within a given file;

d.    be a combination of an alpha prefix that identifies the Producing Party along with an appropriate number to accommodate the number of pages of produced documents (e.g. ABC00000001);

e.    the unused digits of the unique number shall be filled with placeholder zeros (0);

f.    the number of digits in the numeric portion of the Bates number format should not change in subsequent productions; and

g.    if a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted.

(3)     All hidden text (*e.g.*, tracked changes, hidden columns, comments, notes, markups, etc.) will be expanded, extracted, and rendered in the TIFF file.  This specifically includes, but is not limited to, the inclusion of: any notes or comments contained within any PowerPoint slides/presentations; any tracked changes, comments, and hidden text contained within Word Processing files; and hidden rows, columns, and worksheets contained within Spreadsheet or Worksheet Files.

(4)     The Parties are not obligated to populate manually any of the fields in paragraph 2(k) if such fields cannot be reasonably extracted from a Document, with the exception of Default Production Fields that are generated in the course of collection, review, and production.

(ii)     Unitization.  In scanning hard copy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records.  If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes should be maintained as it existed when collected by the Producing Party and should be reflected in proper coding of the family fields set out in paragraph 2(k).  Parties may unitize their documents using either physical unitization (*i.e.*, based on physical binding or organizational elements present with the original paper documents like staples, clips and binder inserts) or logical unitization (*i.e.*, a manual review of the paper to determine what logically constitutes a document like page numbers or headers).  If unitization cannot be reasonably maintained, the original unitization should be documented in the data load file or otherwise electronically tracked if reasonably possible.  The Producing Party should scan

10

and produce folders, redwelds, binder-covers, and other organizational structure. Such materials should be produced as independent documents and be produced before the documents that were contained in these elements to the extent reasonably accomplishable by the above-addressed unitization, (*e.g.*, the file folder should have a Bates number immediately before the documents contained in the file folder). The Producing Party will provide the name of the custodian who had possession of the document when it was collected. A custodian can consist of the name of an employee or other person, a department, an archive storage location, network location, shared drive, database, or other repository.

**f.    Native Files.**

(i)    The only files that should be produced in native format are files not easily converted to image format, such as spreadsheets (*e.g.* Excel), desktop databases (*e.g.* Access files), Microsoft Project files, and audio/video multimedia files. A TIFF placeholder endorsed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format. To the extent feasible, spreadsheets that require redaction shall be redacted natively and produced in Native Format along with the original file metadata as set forth in paragraph 2(f) and text re-extracted after redaction. Native files requiring redaction may also be produced as TIFF images with OCR Text Files in lieu of a native file. Nothing in this protocol shall limit a Party's ability to elect to produce other forms of responsive ESI in Native Format.

(ii)    Extracted text taken from native files will be provided at a document level. There will be one text file per document, using the same name as the beginning Bates number (Document ID) of the document. The extracted text file for a document will reside in a separate folder from the images for that document. The text file associated with any redacted document

will exclude redacted text (*i.e.*, the Producing Party can OCR the redacted image of the unstructured ESI and replace the original extracted text).

(iii)    The Parties agree to use documents produced in Native Format only to the extent that doing so is reasonably practicable and proportionate to the needs of the case.  A Party seeking to use a document produced in Native Format in this proceeding (*e.g.* as an attachment to a pleading, deposition exhibit, etc.) may:

(1)    image the native file to TIFF image or PDF file in accordance with paragraph 2(c).

(2)    include in the margin or footer of each page of the TIFF image or PDF file (a) the original production number of the native file, (b) the full confidentiality designation required by the Protective Order, and (c) the text, "file produced natively;"

(3)    prepend to the TIFF image or PDF file the associated slipsheet included with the initial production of the native file; and

(4)    print the required hardcopy from the resulting TIFF image or PDF file.

g.    **Embedded Objects.**  The Parties will not review or produce embedded files (*e.g.*, as .vcf files embedded in emails, .xlsx files embedded in PowerPoint presentations) unless the embeddings are user generated (*e.g.* PDF with embedded Word and Excel documents, Word document with another embedded Word document, etc.).   The Parties will accommodate reasonable and proportional requests made in good faith for the production of embedded objects on a case-by-case basis.

h.   **Corrupt or Inaccessible Files.**  Certain files may be inaccessible due to password protection, corruption, or unreadable document formats.  If reasonable efforts to obtain useful TIFF images or accessible native versions of these files are unsuccessful, such documents may be withheld.  If there are corrupt, password protected or unreadable files that are within a family, the producing party will include a "File Could Not Be Processed" slip sheet to maintain family integrity.

i.   **Appearance and Content**.  Each document's TIFF image file shall contain the same information and the same physical representation as the original, except as necessary to redact privileged or otherwise protected information or otherwise comply with this Order (*e.g.*, necessary to expand and render hidden text as provided above).  If a produced document presents imaging or formatting problems that the Producing Party was not able to resolve at the time of production, the Requesting Party, upon discovery, may request a replacement copy from the Producing Party of the problematic document.  The Parties will accommodate reasonable and proportional requests made in good faith with respect to any such request.

**j.   Metadata fields.**

(i)   <u>Generally</u>.  The Parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists: Confidentiality, All Custodians, File Path, Email Subject, Conversation Index, Redacted, Redaction Reason, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Subject, Filename, Author, Date Created, Time Created, Date Modified, Time Modified, MD5 Hash, File Type, File Path, Document type (*e.g.,* email, attachment, stand-alone), File Size, File Extension, Pages, Control Number Begin, Control Number End (*i.e.* BegProd, EndProd), Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof), Attachment Count, ProdVol.

k.      **Native Production Format.**  Native files will be produced only to the extent described in the "Native Files" section above, as the Parties may agree, or as the Court may order. If native files are produced, their formatting will be as follows:

(i)      Native files will be produced with a Bates stamped image indicating that the file was produced natively.

(ii)      Native files will be named the same as the beginning Bates number (Document ID) as the Bates stamped image.

(iii)      Where documents are produced in native form, a full path to the native document must be included in a doclink field in the metadata.

(iv)      A confidentiality designation (if applicable) shall be included in the filename (to the extent possible) as well as the TIFF placeholder (if one exists), and on the physical storage device (*e.g.*, CD, USB, or hard drive) (if one exists).

l.      **Color.**  The Parties will accommodate reasonable and proportional requests made in good faith for the production of specific color images originally produced in grayscale TIFF format to the extent available and where reasonably necessary to decipher the complete meaning, context, or content of the documents on a case-by-case basis.

m.      **Organization of Production**.  Production of custodian and original file path information constitutes production in the usual course of business for electronic files.

n.      **Family Relationships of Electronic Files.**  Parent-child relationships between ESI (*e.g.*, the association between an attachment and its parent email, or a word processing document embedding in a PDF), must be preserved by assigning sequential Bates numbers to all files within a parent-child group, and by providing accurate attachment ranges for those files in the metadata

14

fields required.  This provision does not apply to hyperlinked files to which a link is contained but that are not attached to, or embedded within, the parent.

        **o.**      **Production Media.**

        (i)      Documents shall be produced via secure FTP site for productions of up to 50 GB.  For productions larger than 50 GB, an external, encrypted hard drive may be requested (the "Production Media").  Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

        (1)      name of the Litigation and its case number;

        (2)      name of the producing Party;

        (3)      date of the production (mm/dd/yyyy);

        (4)      volume number (in alphanumeric format—*i.e.* ABC001);

        (5)      Bates Number range;

        (6)      confidentiality designation; and

        (7)      notes regarding any irregularities in the production (*e.g.*, whether it is replacement Production Media).

If a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive.  Volumes should be numbered consecutively (ABC001, ABC002, etc.).

        (ii)      <u>Replacement Production Media</u>.  Any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates Number range(s) being replaced.

        (iii)      <u>Encryption of Production Media</u>.  To maximize the security of information in transit, any media on which documents or electronic files are produced, and productions made

15

via FTP shall be encrypted by the Producing Party.  In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.  The Requesting Parties in this matter are on notice that certain data produced may originate from custodians in the European Union and the receiving parties therefore agree to follow the strictest security standards in guarding access to said data.

      p.      **Redactions**.  In accordance with paragraph 1.d.(viii.), the parties may redact, from any TIFF image, metadata field, and/or native file, information that is protected from disclosure by any applicable privilege, immunity, law, or regulation, including but not limited to information protected by attorney-client privilege, work product doctrine, joint defense work product doctrine, individually identifiable health information, personal identifying information, redactions required under 21 C.F.R. 20.63, or as set forth in the Protective Order.  Each redaction shall be clearly labeled and include the reason for the redaction, such as "Redacted-Privileged," "Redacted-Protected Data," or "Redacted-Future Product," as appropriate.  No Party shall be required to produce a redaction log, provided that the reason for the redaction appears on the redaction label (*e.g.* "Privilege", "Protected Data"), absent a showing of good cause.  The parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this paragraph.

      q.      **Non-Responsive Attachments**.  The Parties agree that fully non-responsive attachments to responsive parent documents need not be produced.  For such fully non-responsive attachments, a placeholder slip-sheet endorsed "Withheld Non-Responsive" will be produced to capture the family relationship.  If any document in a document family is responsive (*e.g.*, an attachment to an email), the parent document in the family shall be produced without regard to whether it is independently responsive (subject to the redaction provisions of Paragraph p of this

16

subsection).    The Parties will make relevancy and production determinations for hard copy documents at the document level.

3.    **Objections.**

a.    **General.**  The Parties do not waive any objections including, but not limited to, the relevance, responsiveness, production, discoverability, possession, custody, control, or confidentiality of Documents, including (without limitation) objections regarding the burden, over-breadth, or relevance of document requests related to Documents.  Nothing in this Order shall be interpreted to require the disclosure of irrelevant information, relevant information that is overly burdensome, or relevant information protected by the attorney-client privilege, work product immunity, or any other applicable privilege or immunity, or that is otherwise not discoverable.

b.    **No Waiver of Rights Regarding Review.**  By entering this Order, a Party is not giving up its right to review its documents for privilege or for any other reason (including to identify non-responsive documents) and the existence of this Order cannot be used to compel a Party to produce documents without review.  Moreover, this Order does not mean that the cost of review should not be considered in whether any particular discovery is disproportionate (*i.e.*, that the marginal benefit of the discovery does not warrant the cost of said discovery, including review).

4.    **Miscellaneous.**

a.    **Variance**.  Any practice or procedure set forth herein may be varied by agreement of the Parties without order of the Court.  Failure of the Parties to agree on any modifications may be raised with the Court as necessary and in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Karen Jacobs (#2881)
Rodger D. Smith II (#3778)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
rsmith@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Plaintiffs Sumitomo Pharma Switzerland GmbH, Sumitomo Pharma America, Inc., Sumitomo Pharma Co. Ltd., Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals International AG, and Pfizer Inc.*

STAMOULIS & WEINBLATT LLC

*/s/ Richard C. Weinblatt*

Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 N. Street, Third Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Defendant Aizant Drug Research Solutions Private Limited.*

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Kelly E. Farnan*

Kelly E. Farnan (#4395)
Katharine Lester Mowery (#5629)
One Rodney Square
920 North King Street
Wilmington, De 19801
(302) 651-7700
farnan@rlf.com
mowery@rlf.com

*Attorneys for Defendants Apotex Inc., Apotex Corp., BDR Pharmaceuticals International Pvt. Ltd., and BDR LifeSciences Pvt. Ltd.*

MORRIS JAMES LLP

*/s/ Kenneth L. Dorsney*

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
3205 Avenue North Boulevard
Suite 100
Wilmington, DE 19803
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Defendants Cipla Limited*

18

*and Cipla USA, Inc.*

STAMOULIS & WEINBLATT LLC

*/s/ Stamatios Stamoulis*

Stamatios Stamoulis (#4606)
800 N. West Street, Third Floor
Wilmington, DE 19801
(302) 999-1540
Stamoulis@swdelaw.com

*Attorneys for Defendants*
*Hetero Labs Limited, Hetero Labs*
*Limited Unit-V, and Hetero USA, Inc.*

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Kelly E. Farnan*

Kelly E. Farnan (#4395)
Katharine Lester Mowery (#5629)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
mowery@rlf.com

*Attorneys for Defendants MSN*
*Laboratories Private Ltd., MSN*
*Pharmaceuticals Inc.*

MORRIS JAMES LLP

*/s/ Kenneth L. Dorsney*

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
3205 Avenue North Boulevard
Suite 100
Wilmington, DE 19803
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

19

*Attorneys for Defendants Annora
Pharma Private Limited, Hetero Labs
Limited, and Hetero USA, Inc.*

HEYMAN ENERIO GATTUSO & HIRZEL
LLP

*/s/ Dominick T. Gattuso*

Dominick T. Gattuso (# 3630)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 472-7300
dgattuso@hegh.law

*Attorneys for Defendant Sandoz Inc.*

September 19, 2025

IT IS SO ORDERED this 22nd day of September 2025

The Honorable Maryellen Noreika
United States District Judge

20

## SCHEDULE A

1.    Deleted, slack, fragmented, or other data only accessible by forensics.

2.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.    On-line access data such as temporary internet files, history, cache, cookies, and the like.

4.    Data in metadata fields that are frequently updated automatically, such as last-opened dates, except as specified in this Order (the metadata fields identified in paragraph 2(k))

5.    Data that are substantially duplicative of data that are more accessible elsewhere, such as backup data.

6.    Voice messages, including telephone or VOIP voice messages.

7.    Texts, Instant messages, video and audio files from video and audio conferencing services (*e.g.*, Zoom, Webex, Microsoft Teams, etc.), and Chat Application Data (*e.g.*, Slack, Zoom, Webex, Microsoft Teams, etc.) that are not ordinarily printed.

8.    Electronic mail or pin-to-pin messages sent to or from mobile devices (*e.g.*, iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9.    Other electronic data stored on mobile devices, personal digital assistants, and tablets, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10.    Logs of calls made from mobile devices.

11.    Server, system, software application, or network logs.

12.    Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13.    Data remaining from systems no longer in use that is unintelligible on the systems in use

14.    Dynamic fields of databases or log files that are not retained in the usual course of business;

21

15.    Automatically saved interim versions of documents and emails;

16.    Data stored on photocopiers, scanners and fax machines;

17.    Social media sites;

18.    Personal computers and personal email not regularly used for business activities;

19.    ESI that was disposed before a preservation obligation in this matter came into effect;

20.    Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment;

21.    Files that do not store user-created content during ordinary use such as structural files, operating system files, application source code, configuration, and other similar application files;

22.    Files included on the National Institute of Standards and Technology (NIST) List (http://www.nsrl.nist.gov/); and

23.    Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.