IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUMITOMO PHARMA SWITZERLAND GMBH, SUMITOMO PHARMA AMERICA, INC., SUMITOMO PHARMA CO., LTD., TAKEDA PHARMACEUTICAL COMPANY LIMITED, TAKEDA PHARMACEUTICALS INTERNATIONAL AG, and PFIZER INC., <br><br> Plaintiffs, <br><br> v. <br><br> APOTEX INC., APOTEX CORP., BDR PHARMACEUTICALS INTERNATIONAL PVT. LTD., and BDR LIFESCIENCES PVT. LTD., et. al, <br><br> Defendants. | C.A. No. 25-311-MN <br> (Consolidated) |

**SANDOZ INC.'S ANSWER, DEFENSES, AND COUNTERCLAIMS
TO PLAINTIFFS' AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Sandoz Inc. ("Sandoz" or "Defendant"), by and through the undersigned attorneys, hereby answers the Amended Complaint of Plaintiffs Sumitomo Pharma Switzerland GmbH, Sumitomo Pharma America, Inc., Sumitomo Pharma Company Limited (collectively, "Sumitomo"), Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals International AG (collectively, "Takeda"), and Pfizer Inc. ("Pfizer") (collectively, "Plaintiffs"), filed as D.I. 169 on February 27, 2026 (the "Complaint"), as follows:

**RESPONSE TO "COMPLAINT FOR PATENT INFRINGEMENT"**

1.      This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. §§ 100 et. seq., as well as the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, against Defendant Sandoz Inc. ("Sandoz"). This action arises out of the submission by Sandoz of Abbreviated New Drug Application ("ANDA") No. 219913 (the "Sandoz ANDA") to the U.S. Food and Drug Administration ("FDA") seeking approval to manufacture and sell 120 mg tablets of relugolix, a generic version of Orgovyx® (the "ANDA Product"), prior to the expiration of U.S. Patent Nos. 11,795,178, 12,325,714, 12,097,198, 12,144,809, 12,336,990, and 10,350,170 (collectively, the "Patents-in-Suit").

**ANSWER:** Paragraph 1 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that the Complaint purports to state a claim for alleged infringement of United States Patent Nos. 11,795,178 ("the '178 patent"), 12,325,714 ("the '714 patent"), 12,097,198 ("the '198 patent"), 12,144,809 ("the '809 patent"), 12,336,990 ("the '990 patent"), and 10,350,170 (the '170 patent"). Further answering, Sandoz admits that it submitted Abbreviated New Drug Application ("ANDA") No. 219913 seeking approval for 120 mg tablets of relugolix ("Sandoz's ANDA Product"). Further answering, Sandoz admits that ANDA No. 219913 contains, *inter alia*, patent certifications under 21 U.S.C. § 355(j)(2)(A)(vii)(IV), which state that the '178, '714, '198, '809,'990, and '170 patents are invalid, unenforceable, and/or will not be infringed by the manufacture, use, or sale of Sandoz's ANDA Product. Sandoz denies any and all remaining allegations of Paragraph 1.

### RESPONSE TO "PARTIES"

2. Plaintiff Sumitomo Pharma Switzerland GmbH ("SMPS") is a corporation organized and existing under the laws of Switzerland, with its principal place of business at Aeschengraben 27, 4051 Basel, Switzerland.

**ANSWER:** Paragraph 2 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz lacks knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of Paragraph 2, and therefore denies any and all remaining allegations of Paragraph 2.

3. Plaintiff Sumitomo Pharma America, Inc. ("SMPA") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 84 Waterford Drive, Marlborough, MA 01752.

**ANSWER:** Paragraph 3 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz lacks knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of Paragraph 3, and therefore denies any and all remaining allegations of Paragraph 3.

4.      Plaintiff Sumitomo Pharma Company Limited ("SMP") is a corporation organized and existing under the laws of Japan, with its principal place of business at 6-8, Doshomachi 2-chome, Chuo-ku, Osaka-shi, Osaka 541-0045, Japan.

**ANSWER:**    Paragraph 4 contains legal conclusions for which no answer is required.  To the extent an answer is required, Sandoz lacks knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of Paragraph 4, and therefore denies any and all remaining allegations of Paragraph 4.

5.      Plaintiff Takeda Pharmaceutical Company Limited ("Takeda") is a corporation organized and existing under the laws of Japan, with its principal place of business at 1-1, Doshomachi 4-chome, Chuo-ku, Osaka 540-8645, Japan.

**ANSWER:**    Paragraph 5 contains legal conclusions for which no answer is required.  To the extent an answer is required, Sandoz lacks knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of Paragraph 5, and therefore denies any and all remaining allegations of Paragraph 5.

6.      Plaintiff Takeda Pharmaceuticals International AG ("Takeda International") is a corporation organized and existing under the laws of Switzerland, with its principal place of business at Thurgauerstrasse 130, Glattpark-Opfikon, Zurich, 8152, Switzerland.

**ANSWER:**    Paragraph 6 contains legal conclusions for which no answer is required.  To the extent an answer is required, Sandoz lacks knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of Paragraph 6, and therefore denies any and all remaining allegations of Paragraph 6.

7.      Plaintiff Pfizer Inc. ("Pfizer") is a corporation organized and existing under the laws of the State of Delaware and with its principal place of business at 66 Hudson Boulevard East, New York, New York 10001.

**ANSWER:**    Paragraph 7 contains legal conclusions for which no answer is required.  To the extent an answer is required, Sandoz lacks knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of Paragraph 7, and therefore denies any and all remaining allegations of Paragraph 7.

8.    Plaintiffs SMPS, SMPA, SMP, Takeda, Takeda International, and Pfizer are referred to collectively herein as "Plaintiffs."

**ANSWER:**    Paragraph 8 contains legal conclusions for which no answer is required.  To the extent an answer is required, Sandoz lacks knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of Paragraph 8, and therefore denies any and all remaining allegations of Paragraph 8.

9.    Upon information and belief, Sandoz is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 100 College Road West, Princeton, NJ 08540.

**ANSWER:**    Paragraph 9 contains legal conclusions for which no answer is required.  To the extent an answer is required, Sandoz admits that it is a corporation organized and existing under the laws of the State of Delaware with a place of business at 100 College Road West, Princeton, NJ 08540.  Sandoz denies any and all remaining allegations of Paragraph 9.

10.    Upon information and belief, Sandoz, itself and through its subsidiaries and agents, develops, manufactures, markets, distributes, and/or imports pharmaceutical products for sale and use throughout the United States, including in Delaware.

**ANSWER:**    Paragraph 10 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that it seeks regulatory approval of and sells pharmaceutical products in the United States.  Sandoz denies any and all remaining allegations of Paragraph 10.

11.    Upon information and belief, Sandoz is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the U.S. market, including in Delaware.

**ANSWER:**    Paragraph 11 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that it seeks regulatory approval of and sells pharmaceutical products in the United States.  Sandoz denies any and all remaining allegations of Paragraph 11.

12.     Upon information and belief, Sandoz submitted the Sandoz ANDA to the FDA.

**ANSWER:**     Paragraph 12 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that it submitted ANDA No. 219913 seeking approval for 120 mg tablets of relugolix to the FDA.   Sandoz denies any and all remaining allegations of Paragraph 12.

13.     Upon information and belief, following any FDA approval of the Sandoz ANDA, Sandoz will make, use, offer to sell, and/or sell the ANDA Product that is the subject of the Sandoz ANDA throughout the United States, including in Delaware, and/or import such generic products into the United States, including into Delaware.

**ANSWER:**     Paragraph 13 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that it seeks regulatory approval of and sells pharmaceutical products in the United States.  Sandoz denies any and all remaining allegations of Paragraph 13.

## RESPONSE TO "JURISDICTION AND VENUE"

14.     This case arises under the patent laws of the United States of America, 35 U.S.C. §§ 100 et. seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

**ANSWER:**     Paragraph 14 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that Plaintiffs' Complaint purports to state a claim under 35 U.S.C. § 271(e)(2).   Further answering, Sandoz admits that subject matter jurisdiction is proper, if at all, solely for Plaintiffs' alleged infringement claims against Sandoz under 35 U.S.C. § 271(e)(2)(A).  Sandoz denies that subject matter jurisdiction is proper for any claims asserted against Sandoz under 35 U.S.C. § 271(a), (b), or (c).  Sandoz denies any and all remaining allegations of Paragraph 14.

15.     This Court has personal jurisdiction over Sandoz at least because Sandoz is a corporation organized and existing under the laws of Delaware.

5

**ANSWER:**    Paragraph 15 contains legal conclusions for which no answer is required. To the extent an answer is required, denied.  Further answering, Sandoz does not contest personal jurisdiction in this judicial district solely for the limited purpose of this action only.

16.    Venue is proper in this Court as to Sandoz under 28 U.S.C. § 1400(b) because, *inter alia*, Sandoz is incorporated in Delaware.

**ANSWER:**    Paragraph 16 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz does not contest venue in this judicial district solely for the limited purpose of this action only.  Sandoz denies any and all remaining allegations of Paragraph 16.

## RESPONSE TO "BACKGROUND"

17.    Orgovyx® (relugolix) is a nonpeptide GnRH receptor antagonist, for oral administration, approved by the FDA for the treatment of adult patients with advanced prostate cancer. Orgovyx® is marketed in the United States pursuant to New Drug Application (NDA) No. 214621, which was approved by the FDA on December 18, 2020. SMPA holds the NDA for Orgovyx®.

**ANSWER:**    Paragraph 17 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that, according to FDA's online records, "SUMITOMO PHARMA AMERICA INC" is the holder of NDA No. 214621 for Orgovyx®, relugolix tablets 120 mg strength.  Sandoz denies any and all remaining allegations of Paragraph 17.

18.    The Patents-in-Suit cover Orgovyx® and/or its FDA-approved methods of use, and have been properly listed in connection with Orgovyx® in the FDA's publication, *Approved Drug Products with Therapeutic Equivalence Evaluations*, referred to as the "Orange Book."

**ANSWER:**    Paragraph 18 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that the electronic version of FDA's Orange Book currently lists the '178, '714, '198, '809, '990 and '170 patents in connection with Orgovyx®. Sandoz denies any and all remaining allegations of Paragraph 18.

19.    U.S. Patent No. 11,795,178 (the "'178 Patent"), titled "Compositions of Thienopyrimidine Derivatives" (Ex. A), was duly and legally issued on October 24, 2023, and will expire on September 27, 2033. Takeda owns the '178 Patent.

**ANSWER:**    Paragraph 19 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that, according to the online records of the PTO, the '178 patent, which is titled "Compositions of Thienopyrimidine Derivatives" issued on or about October 24, 2023.  Sandoz further admits that what purports to be a copy of the '178 patent is attached to Plaintiffs' Complaint as Exhibit A.  Sandoz denies that the '178 patent was duly and legally issued, as well as any suggestion that the '178 patent is valid and enforceable. Sandoz denies any and all remaining allegations of Paragraph 19.

20.    U.S. Patent No. 12,325,714 (the "'714 Patent"), titled "Compositions of Thienopyrimidine Derivatives" (Ex. B), was duly and legally issued on June 10, 2025, and will expire on September 27, 2033. Takeda owns the '714 Patent.

**ANSWER:**    Paragraph 20 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that, according to the online records of the PTO, the '714 patent, which is titled "Compositions of Thienopyrimidine Derivatives" issued on or about June 10, 2025.  Sandoz further admits that what purports to be a copy of the '714 patent is attached to Plaintiffs' Complaint as Exhibit B.  Sandoz denies that the '714 patent was duly and legally issued, as well as any suggestion that the '714 patent is valid and enforceable.  Sandoz denies any and all remaining allegations of Paragraph 20.

21.    U.S. Patent No. 12,097,198 (the "'198 Patent"), titled "Treatment of Prostate Cancer" (Ex. C), was duly and legally issued on September 24, 2024, and will expire on September 29, 2037. SMP and Takeda jointly own the '198 Patent.

**ANSWER:**    Paragraph 21 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that, according to the online records of the PTO, the '198 patent, which is titled "Treatment of Prostate Cancer" issued on or about September 24, 2024.  Sandoz further admits that what purports to be a copy of the '198 patent is attached to

Plaintiffs' Complaint as Exhibit C. Sandoz denies that the '198 patent was duly and legally issued, as well as any suggestion that the '198 patent is valid and enforceable. Sandoz denies any and all remaining allegations of Paragraph 21.

22. U.S. Patent No. 12,144,809 (the "'809 Patent"), titled "Treatment of Prostate Cancer" (Ex. D), was duly and legally issued on November 19, 2024, and will expire on September 29, 2037. SMP and Takeda jointly own the '809 Patent.

**ANSWER:** Paragraph 22 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that, according to the online records of the PTO, the '809 patent, which is titled "Treatment of Prostate Cancer" issued on or about November 19, 2024. Sandoz further admits that what purports to be a copy of the '809 patent is attached to Plaintiffs' Complaint as Exhibit D. Sandoz denies that the '809 patent was duly and legally issued, as well as any suggestion that the '809 patent is valid and enforceable. Sandoz denies any and all remaining allegations of Paragraph 22.

23. U.S. Patent No. 12,336,990 (the "'990 Patent"), titled "Treatment of Prostate Cancer" (Ex. E), was duly and legally issued on June 24, 2025, and will expire on September 29, 2037. SMP and Takeda jointly own the '990 Patent.

**ANSWER:** Paragraph 23 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that, according to the online records of the PTO, the '990 patent, which is titled "Treatment of Prostate Cancer" issued on or about June 24, 2025. Sandoz further admits that what purports to be a copy of the '990 patent is attached to Plaintiffs' Complaint as Exhibit E. Sandoz denies that the '990 patent was duly and legally issued, as well as any suggestion that the '990 patent is valid and enforceable. Sandoz denies any and all remaining allegations of Paragraph 23.

24. U.S. Patent No. 10,350,170 (the "'170 Patent"), titled "Solid Preparation" (Ex. F) was duly and legally issued on July 16, 2019, and will expire on February 25, 2036. Takeda owns the '170 Patent.

**ANSWER:** Paragraph 24 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that, according to the online records to the PTO, the '170 patent, which is titled "Solid Preparation" issued on or about July 16, 2019. Sandoz further admits that what purports to be a copy of the '170 patent is attached to Plaintiffs' Amended Complaint as Exhibit F. Sandoz denies that the '170 patent was duly and legally issued, as well as any suggestion that the '170 patent is valid and enforceable. Sandoz denies any and all remaining allegations of Paragraph 24.

25. Takeda International, SMP, and Pfizer are exclusive licensees of the Patents-in-Suit.

**ANSWER:** Paragraph 25 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz lacks knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of Paragraph 25, and therefore denies any and all remaining allegations of Paragraph 25.

26. Orgovyx® is marketed and sold by SMPA and Pfizer throughout the United States, including in Delaware.

**ANSWER:** Paragraph 26 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz lacks knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of Paragraph 26, and therefore denies any and all remaining allegations of Paragraph 26.

27. By letter dated June 20, 2025, Sandoz notified SMPS, Takeda, Takeda International and Pfizer that Sandoz had submitted the Sandoz ANDA to the FDA for approval of relugolix tablets, 120 mg, a generic version of Orgovyx®.

**ANSWER:** Paragraph 27 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that it sent a letter dated June 20, 2025 to Sumitomo Pharma Switzerland GmbH, Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals International AG, and Pfizer Inc. titled "Relugolix Tablets, 120 mg: Notification

9

of Certification of Invalidity, Unenforceability, and/or Non-Infringement for U.S. Patent Nos.

10,350,170 B2, 10,449,191 B2, 10,786,501 B2, 11,583,526 B2, 11,795,178 B2, 12,097,198 B2,

and 12,144,809 Bl, Pursuant to § 505(j)(2)(B)(iv) of the Federal Food, Drug and Cosmetic Act".

Sandoz denies any and all remaining allegations of Paragraph 27.

28.    By submitting the Sandoz ANDA, Sandoz has represented to the FDA that the ANDA Product has the same active ingredient as Orgovyx®, has the same dosage form and strength as Orgovyx®, and is bioequivalent to Orgovyx®.

**ANSWER:**    Paragraph 28 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that ANDA No. 219913 meets all statutory

requirements, including those of 21 U.S.C. §§ 355(j)(2)(A)(i), 355(j)(2)(A)(v), 355(j)(2)(A)(ii)(I);

21 C.F.R. §§ 314.94(a)(5) and 314.94(a)(8)(iv).  Sandoz denies any and all remaining allegations

of Paragraph 28.

29.    In Sandoz's Paragraph IV Notice Letter (June 20, 2025) ("Notice Letter"), Sandoz stated that the Sandoz ANDA included a paragraph IV certification pursuant to 21 U.S.C. § 355(j) with respect to the '178 Patent, the '198 Patent, the '809 Patent, and the '170 Patent, and alleged that the '178 Patent, the '198 Patent, the '809 Patent, and the '170 Patent are invalid or will not be infringed by the commercial manufacture, use, or sale of the ANDA Product. The Notice Letter further stated that Sandoz is seeking approval to engage in the commercial manufacture, use, offer for sale, sale, or importation of the ANDA Product before the '178 Patent, the '198 Patent, the '809 Patent, and the '170 Patent expire.

**ANSWER:**    Paragraph 29 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that ANDA No. 219913 contains, inter alia,

patent certifications under 21 U.S.C. § 355(j)(2)(A)(vii)(IV), which state that the '178, '198,'809,

and '170 patents are invalid, unenforceable, and/or will not be infringed by the manufacture, use,

or sale of Sandoz's ANDA Products.  Further answering, Sandoz admits that its PIV Notice Letter

stated, inter alia, that "[t]he ANDA was submitted under 21 U.S.C. §§ 355(j)(1) and (2)(A), and

contains a paragraph IV certification to obtain approval to engage in the commercial manufacture,

10

use or sale of Relugolix Tablets, 120 mg, before the expiration of the 170, 191, 501, 526, 178, 198, and 809 patents, . . . ." Sandoz denies any and all remaining allegations of Paragraph 29.

30.    In June 2025, two additional patents were listed in the Orange Book in connection with Orgovyx®. The '714 Patent was listed on June 11, 2025 and the '990 Patent was listed on June 25, 2025. The '714 Patent is related to the '178 Patent for which Sandoz submitted a Paragraph IV certification. The '990 Patent is related to the '198 Patent and the '809 Patent, for each of which Sandoz submitted a Paragraph IV certification.

**ANSWER:**    Paragraph 30 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that the electronic version of FDA's Orange

Book currently lists the '714 and '990 patents in connection with Orgovyx® with submission dates

of June 11, 2025 and June 25, 2025, respectively.    Further answering, Sandoz admits that,

according to the online records of the PTO, the '714 patent, which is titled "Compositions of

Thienopyrimidine Derivatives" issued on or about June 10, 2025, and purports to be a continuation

of U.S. Patent Application 17/694,635, now U.S. Patent No. 11,795,178.    Further answering,

Sandoz admits that, according to the online records of the PTO, the '990 patent, which is titled

"Treatment of Prostate Cancer" issued on or about June 24, 2025, and purports to be a continuation

of U.S. Patent Application 17/866,203, now U.S. Patent Nos. 12,097,198 and 12,144,809.  Sandoz

denies any and all remaining allegations of Paragraph 30.

31.    The '178 Patent and '714 Patent each expire on September 27, 2033, the '198 Patent, '809 Patent, and '990 Patent each expire on September 29, 2037, and the '170 Patent expires on February 25, 2036. Based on Sandoz's representation that it is seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the ANDA Product before the '178 Patent, the '198 Patent, the '809 Patent, and the '170 Patent expire, Sandoz is necessarily also seeking approval of the ANDA Product before the expirations of the '714 Patent and the '990 Patent.

**ANSWER:**    Paragraph 31 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that its PIV Notice Letter stated, inter alia, that

"[t]he ANDA was submitted under 21 U.S.C. §§ 355(j)(1) and (2)(A), and contains a paragraph

IV certification to obtain approval to engage in the commercial manufacture, use or sale of

11

Relugolix Tablets, 120 mg, before the expiration of the 170, 191, 501, 526, 178, 198, and 809 patents, . . . ." Sandoz denies any and all remaining allegations of Paragraph 31.

32.     Upon information and belief, Sandoz had knowledge of the '178 Patent, the '198 Patent, the '809 Patent, and the '170 Patent no later than when the Sandoz ANDA was submitted to the FDA.

**ANSWER:**    Paragraph 32 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that its PIV Notice Letter stated, inter alia, that "[t]he ANDA was submitted under 21 U.S.C. §§ 355(j)(1) and (2)(A), and contains a paragraph IV certification to obtain approval to engage in the commercial manufacture, use or sale of Relugolix Tablets, 120 mg, before the expiration of the 170, 191, 501, 526, 178, 198, and 809 patents, . . . ." Sandoz denies any and all remaining allegations of Paragraph 32.

33.     Prior to the filing of this Complaint, Plaintiffs provided Sandoz copies of the '714 Patent and '990 Patent by e-mail correspondence dated July 29, 2025.

**ANSWER:**    Paragraph 33 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that Plaintiffs sent a purported copy of the '714 and '990 patents by e-mail correspondence dated July 29, 2025.  Sandoz denies any and all remaining allegations of Paragraph 33.

34.     Sandoz knew or should have known of the '714 Patent no later than June 11, 2025, when the '714 Patent was listed in the Orange Book for Orgovyx®.

**ANSWER:**    Paragraph 34 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that the electronic version of FDA's Orange Book currently lists the '714 patent in connection with Orgovyx® and lists the submission date as June 11, 2025.  Sandoz denies any and all remaining allegations of Paragraph 34.

35.     Sandoz knew or should have known of the '990 Patent no later than June 25, 2025, when the '990 Patent was listed in the Orange Book for Orgovyx®.

**ANSWER:**    Paragraph 35 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that the electronic version of FDA's Orange Book currently lists the '990 patent in connection with Orgovyx® and lists the submission date as June 25, 2025. Sandoz denies any and all remaining allegations of Paragraph 35.

36.    In the Notice Letter, Sandoz provided an Offer of Confidential Access ("OCA") to the Sandoz ANDA pursuant to 21 U.S.C. § 355(j)(5)(C) and 21 C.F.R. § 314.95(c)(8). Plaintiffs engaged in good faith negotiations with Sandoz regarding the terms of its OCA. Sandoz, however, refused to provide its ANDA under reasonable terms as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information, for example, terms governing the scope of applicable patent prosecution and FDA regulatory bars, in accordance with terms previously and widely accepted by courts.

**ANSWER:**    Sandoz admits that its PIV Notice Letter included an "Offer of Confidential Access" pursuant to 21 U.S.C. § 355(j)(5)(C)(i)(III). Sandoz further admits that the parties did not reach an agreement regarding access to Sandoz's ANDA because Plaintiffs refused the terms proposed with Sandoz's Notice Letter and instead made unreasonable demands for materials beyond those properly within scope of an Offer of Confidential Access under section 355(j)(5)(C)(i)(III). Sandoz further answers that it produced a copy of its ANDA No. 219913 on September 22, 2025. Sandoz denies any and all remaining allegations of Paragraph 36.

37.    Upon information and belief, Sandoz intends to engage in the manufacture, use, offer for sale, sale, and/or importation of the ANDA Product immediately and imminently upon approval of the Sandoz ANDA.

**ANSWER:**    Paragraph 37 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that it submitted ANDA No. 219913 to the FDA seeking approval for 120 mg tablets of relugolix. Sandoz denies any and all remaining allegations of Paragraph 37.

38.    This action was commenced before the expiration of 45 days from the date of Plaintiffs' receipt of the Notice Letter, on August 1, 2025. (D.I. 1).

13

**ANSWER:** Paragraph 38 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz states that it sent its PIV Notice Letter on June 20, 2025 via Federal Express to Sumitomo Pharma Switzerland GmbH, Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals International AG, and Pfizer Inc. Sandoz denies any and all remaining allegations of Paragraph 38.

## RESPONSE TO "CLAIMS FOR RELIEF"

## RESPONSE TO "COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,795,178"

39. Plaintiffs incorporate each of the preceding paragraphs 1-38 as if fully set forth herein.

**ANSWER:** Sandoz incorporates by reference its responses to the preceding Paragraphs 1-38 of the Complaint as if fully set forth herein.

40. Sandoz's submission of the Sandoz ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the ANDA Product before the expiration of the '178 Patent constituted an act of infringement of at least claim 1 of the '178 Patent, under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:** Denied.

41. Sandoz's commercial manufacture, use, offer for sale, sale and/or importation of the ANDA Product and/or its active ingredient prior to expiration of the '178 Patent, and Sandoz's inducement of and/or contribution to such conduct, would further infringe at least claim 1 of the '178 Patent, either literally or under the doctrine of equivalents, under 35 U.S.C. §§ 271(a), (b), and/or (c).

**ANSWER:** Denied.

42. Upon FDA approval of the Sandoz ANDA, Sandoz will infringe at least claim 1 of the '178 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing the ANDA Product and/or its active ingredient and/or by actively inducing and contributing to infringement of at least claim 1 of the '178 Patent by others, including but not limited to healthcare providers and patients, under 35 U.S.C. § 271(a), unless enjoined by the Court. Such infringement is imminent because, among other things, Sandoz has notified Plaintiffs of the submission of Sandoz's ANDA seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the ANDA Product before the expiration of the '178 Patent.

14

**ANSWER:** Paragraph 42 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that its PIV Notice Letter stated, *inter alia*, that "[t]he ANDA was submitted under 21 U.S.C. §§ 355(j)(1) and (2)(A), and contains a paragraph IV certification to obtain approval to engage in the commercial manufacture, use or sale of Relugolix Tablets, 120 mg, before the expiration of the 170, 191, 501, 526, 178, 198, and 809 patents, . . . ." Sandoz denies any and all remaining allegations of Paragraph 42.

43. Upon information and belief, Sandoz will actively induce infringement of at least claim 1 of the '178 Patent under 35 U.S.C. § 271(b) by encouraging others, including but not limited to healthcare providers and patients, to make, use, offer for sale, sell, or import the ANDA Product in the United States. Upon information and belief, immediately and imminently upon FDA approval of the Sandoz ANDA, Sandoz will intentionally encourage acts of direct infringement by others, including but not limited to healthcare providers and patients, with knowledge of the '178 Patent and with knowledge that its acts are encouraging infringement.

**ANSWER:** Denied.

44. Unless enjoined by this Court, upon FDA approval of the Sandoz ANDA, Sandoz will contributorily infringe at least claim 1 of the '178 Patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing the ANDA Product and/or its active ingredient in the United States. The ANDA Product and/or its active ingredient constitute a material part of the inventions of the claims of the '178 Patent. Upon information and belief, Sandoz knows that the ANDA Product and/or its active ingredient are especially made or adapted for use in infringing the '178 Patent, and that the ANDA Product and/or its active ingredient are not a staple article or commodity of commerce suitable for substantial noninfringing use. Upon information and belief, Sandoz plans and intends to, and will, contribute to the infringement of the '178 Patent immediately and imminently upon approval of the Sandoz ANDA.

**ANSWER:** Denied.

45. A substantial and justiciable controversy exists between the parties as to the infringement of the '178 Patent.

**ANSWER:** Denied.

46. Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaratory judgment that Sandoz's making, using, offering to sell, selling, and/or importing the ANDA Product will infringe the '178 Patent pursuant to 35 U.S.C. §§ 271(a), (b), and/or (c).

**ANSWER:** Denied.

47.     Upon information and belief, Sandoz acted, and upon FDA approval of the Sandoz ANDA, will act, without a reasonable basis for believing that it would not be liable for directly and/or indirectly infringing the '178 Patent. This is an exceptional case.

**ANSWER:**    Denied.

48.     Unless Sandoz is enjoined from directly or indirectly infringing the '178 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law.

**ANSWER:**    Denied.

### RESPONSE TO "COUNT II: INFRINGEMENT OF U.S. PATENT NO. 12,325,714"

49.     Plaintiffs incorporate each of the preceding paragraphs 1-48 as if fully set forth herein.

**ANSWER:**    Sandoz incorporates by reference its responses to the preceding Paragraphs 1-48 of the Complaint as if fully set forth herein.

50.     Sandoz's submission of the Sandoz ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the ANDA Product before the expiration of the '714 Patent constituted an act of infringement of at least claims 1, 11, and 19 of the '714 Patent, under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:**    Denied.

51.     Sandoz's commercial manufacture, use, offer for sale, sale and/or importation of the ANDA Product and/or its active ingredient prior to expiration of the '714 Patent, and Sandoz's inducement of and/or contribution to such conduct, would further infringe at least claims 1, 11, and 19 of the '714 Patent, either literally or under the doctrine of equivalents, under 35 U.S.C. §§ 271(a), (b), and/or (c).

**ANSWER:**    Denied.

52.     Sandoz knew or should have known of the '714 Patent no later than June 11, 2025, when the '714 Patent was listed in the Orange Book for Orgovyx®. Sandoz knew of the '714 Patent by no later than July 29, 2025, when it was provided with a copy of the '714 Patent by Plaintiffs.

**ANSWER:**    Denied.

53.     Upon FDA approval of the Sandoz ANDA, Sandoz will infringe at least claims 1, 11, and 19 of the '714 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing the ANDA Product and/or its active ingredient and/or by actively inducing and contributing to infringement of at least claims 1, 11, and 19 of the '714 Patent by others, including but not limited to healthcare providers and patients, under 35 U.S.C. §

16

271(a), unless enjoined by the Court. Such infringement is imminent because, among other things, Sandoz has notified Plaintiffs of the submission of Sandoz's ANDA seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the ANDA Product before the expiration of the '714 Patent.

**ANSWER:**    Paragraph 53 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that its PIV Notice Letter stated, *inter alia*, that

"[t]he ANDA was submitted under 21 U.S.C. §§ 355(j)(1) and (2)(A), and contains a paragraph

IV certification to obtain approval to engage in the commercial manufacture, use or sale of

Relugolix Tablets, 120 mg, before the expiration of the 170, 191, 501, 526, 178, 198, and 809

patents, . . . ." Sandoz denies any and all remaining allegations of Paragraph 53.

54.    Upon information and belief, Sandoz will actively induce infringement of at least claims 1, 11, and 19 of the '714 Patent under 35 U.S.C. § 271(b) by encouraging others, including but not limited to healthcare providers and patients, to make, use, offer for sale, sell, or import the ANDA Product in the United States. Upon information and belief, immediately and imminently upon FDA approval of the Sandoz ANDA, Sandoz will intentionally encourage acts of direct infringement by others, including but not limited to healthcare providers and patients, with knowledge of the '714 Patent and with knowledge that its acts are encouraging infringement.

**ANSWER:**    Denied.

55.    Unless enjoined by this Court, upon FDA approval of the Sandoz ANDA, Sandoz will contributorily infringe at least claims 1, 11, and 19 of the '714 Patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing the ANDA Product and/or its active ingredient in the United States. The ANDA Product and/or its active ingredient constitute a material part of the inventions of the claims of the '714 Patent. Upon information and belief, Sandoz knows that the ANDA Product and/or its active ingredient are especially made or adapted for use in infringing the '714 Patent, and that the ANDA Product and/or its active ingredient are not a staple article or commodity of commerce suitable for substantial noninfringing use. Upon information and belief, Sandoz plans and intends to, and will, contribute to the infringement of the '714 Patent immediately and imminently upon approval of the Sandoz ANDA.

**ANSWER:**    Denied.

56.    A substantial and justiciable controversy exists between the parties as to the infringement of the '714 Patent.

**ANSWER:**    Denied.

57.     Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaratory judgment that Sandoz's making, using, offering to sell, selling, and/or importing the ANDA Product will infringe the '714 Patent pursuant to 35 U.S.C. §§ 271(a), (b), and/or (c).

**ANSWER:**    Denied.

58.     Upon information and belief, Sandoz acted, and upon FDA approval of the Sandoz ANDA, will act, without a reasonable basis for believing that it would not be liable for directly and/or indirectly infringing the '714 Patent. This is an exceptional case.

**ANSWER:**    Denied.

59.     Unless Sandoz is enjoined from directly or indirectly infringing the '714 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law.

**ANSWER:**    Denied.

### RESPONSE TO "COUNT III: INFRINGEMENT OF U.S. PATENT NO. 12,097,198"

60.     Plaintiffs incorporated each of the proceeding paragraphs 1-59 as if fully set forth herein.

**ANSWER:**    Sandoz incorporates by reference its responses to the preceding Paragraphs 1-59 of the Complaint as if fully set forth herein.

61.     Sandoz's submission of the Sandoz ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the ANDA Product before the expiration of the '198 Patent constituted an act of infringement at least claims 1-2, 4-6, and 10-12 of the '198 Patent, under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:**    Denied.

62.     Sandoz's commercial manufacture, use, offer for sale, sale and/or importation of the ANDA Product and/or its active ingredient prior to expiration of the '198 Patent, and Sandoz's inducement of and/or contribution to such conduct, would further infringe at least claims 1-2, and 10-12 of the '198 Patent, either literally or under the doctrine of equivalents, under 35 U.S.C §§ 271(a), (b), and/or (c).

**ANSWER:**    Denied.

63.     Upon FDA approval of the Sandoz ANDA, Sandoz will infringe at least claims 1-2, 4-6, and 10-12 of the '198 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing the ANDA Product and/or its active ingredient, and/or by actively inducing and contributing to infringement of the '198 Patent by others, including but not limited to healthcare providers and patients, under 35 U.S.C. § 271(a), unless enjoined by the Court. Such infringement is imminent because, among other things, Sandoz has notified

Plaintiffs of the submission of Sandoz's ANDA seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the ANDA Product before the expiration of the '198 Patent.

**ANSWER:** Paragraph 63 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that its PIV Notice Letter stated, *inter alia*, that "[t]he ANDA was submitted under 21 U.S.C. §§ 355(j)(1) and (2)(A), and contains a paragraph IV certification to obtain approval to engage in the commercial manufacture, use or sale of Relugolix Tablets, 120 mg, before the expiration of the 170, 191, 501, 526, 178, 198, and 809 patents, . . . ." Sandoz denies any and all remaining allegations of Paragraph 63.

64.    Upon information and belief, Sandoz will actively induce infringement of at least claims 1-2, 4-6, and 10-12 of the '198 Patent under 35 U.S.C. § 271(b) by encouraging others, including but not limited to healthcare providers and patients, to make, use, offer for sale, sell, or import the ANDA Product in the United States. Upon information and belief, immediately and imminently upon FDA approval of the Sandoz ANDA, Sandoz will intentionally encourage acts of direct infringement by others, including but not limited to healthcare providers and patients, with knowledge of the '198 Patent and with knowledge that its acts are encouraging infringement. For example, marketing the ANDA Product with its proposed labeling will induce healthcare providers and patients to practice the claimed methods of the '198 Patent.

**ANSWER:** Denied.

65.    Unless enjoined by this Court, upon FDA approval of the Sandoz ANDA, Sandoz will contributorily infringe at least claims 1-2, 4-6, and 10-12 of the '198 Patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing the ANDA Product and its proposed labeling in the United States. The ANDA Product and its proposed labeling are materials for use in practicing methods claimed in the '198 Patent and constitute a material part of those claims' inventions. Upon information and belief, Sandoz knows that the ANDA Product and its proposed labeling are especially made or adapted for use in infringing the '198 Patent, and that the ANDA Product and its proposed labeling are not a staple article or commodity of commerce suitable for substantial noninfringing use. Upon information and belief, Sandoz plans and intends to, and will, contribute to the infringement of the '198 Patent immediately and imminently upon approval of the Sandoz ANDA.

**ANSWER:** Denied.

66.    A substantial and justiciable controversy exists between the parties as to the infringement of the '198 Patent.

**ANSWER:** Denied.

19

67.     Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaratory judgment that Sandoz's making, using, offering to sell, selling, and/or importing the ANDA Product, inducement thereof or contribution thereto, will infringe the '198 Patent pursuant to 35 U.S.C. §§ 271(a), (b), and/or (c).

**ANSWER:**    Denied.

68.     Upon information and belief, Sandoz acted, and upon FDA approval of the Sandoz ANDA, will act, without a reasonable basis for believing that it would not be liable for directly and/or indirectly infringing the '198 Patent. This is an exceptional case.

**ANSWER:**    Denied.

69.     Unless Sandoz is enjoined from directly or indirectly infringing the '198 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law.

**ANSWER:**    Denied.

## RESPONSE TO "COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 12,144,809"

70.     Plaintiffs incorporate each of the preceding paragraphs 1-69 as if fully set forth herein.

**ANSWER:**    Sandoz incorporates by reference its responses to the preceding Paragraphs 1-69 of the Complaint as if fully set forth herein.

71.     The claims of the '809 Patent are directed to a method of treating prostate cancer with relugolix when the patient is "in need of co-administration" of a P-glycoprotein (P-gp) inhibitor.

**ANSWER:**    Paragraph 71 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that the '809 Patent contains the following claim:

> 1. A method of treating prostate cancer in a subject in need thereof, the method comprising:
> (i) orally administering a loading dose of 360 mg of N-(4-(1-(2,6-difluorobenzyl)-5-((dimethylamino) methyl)-3-(6-methoxy-3-pyridazinyl)-2,4-dioxo-1,2,3, 4-tetrahydrothieno[2,3-d]pyrimidin-6-yl)phenyl)-N'-methoxyurea to the subject;
> (ii) beginning about one day after administration of the 360 mg loading dose, orally administering a single 120 mg solid preparation of N-(4-(1-(2,6-difluorobenzyl)-5-((dimethylamino)methyl)-3-(6-methoxy-3-pyridazi-nyl)-2,4-dioxo-1,2,3,4-tetrahydrothieno[2,3-d]pyrimi-din-6-yl)phenyl)-N'-methoxyurea to the subject once a day; and
> (iii) co-administering a P-glycoprotein (P-gp) inhibitor to the subject at least six hours after the oral administration of the single 120 mg solid preparation of N-(4-(1-(2,6-difluorobenzyl)-5-((dimethylamino)methyl)-3-(6-methoxy-3-pyridazinyl)-2,4-dioxo-1,2,3,4-tetrahydrothieno[2,3-d]pyrimidin-6-yl)phenyl)-N'-methoxyurea;

> wherein the subject is in need of co-administration of the P-gp inhibitor.

'809 Patent at Claim 1. Sandoz denies any and all remaining allegations of Paragraph 71.

72. As set forth in the specification of the '809 Patent, P-gp mediates the export of drugs from certain cells. Ex. D at 85:41-43. P-gp can be affected by P-gp inducers or inhibitors which can enhance or impair P-gp mediated uptake, respectively. Ex. D at 85:43-46. P-gp inhibitors, which impair P-gp activity, can increase exposure to certain medications.

**ANSWER:** Paragraph 72 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that the '809 Patent contains the following text:

> P-gp mediates the export of drugs from certain cells, such as those located in the small intestine, blood-brain barrier, hepatocytes, and kidney proximal tube. P-gp may be affected by P-gp inducers or inhibitors, which impair P-gp mediated uptake or efflux, or enhance P-gp activity, respectively.

'809 Patent at 85:41-46. Sandoz denies any and all remaining allegations of Paragraph 72.

73. The specification of the '809 Patent identifies twenty-seven P-gp inhibitors. Ex. D at 85:50-56. The P-gp inhibitors identified in the '809 Patent include beta-blockers (*e.g.*,

21

carvedilol), calcium channel blockers (*e.g.*, diltiazem, felodipine, verapamil), immunosuppressants (*e.g.*, cyclosporine, tacrolimus), antivirals (*e.g.*, telaprevir), antiarrhythmic medications (*e.g.*, amiodarone, dronedarone, propafenone, quinidine), blood thinners (*e.g.*, ticagrelor), antiretrovirals (*e.g.*, lopinavir, ritonavir, saquinavir, tipranavir, efavirenz), antifungals (*e.g.*, itraconazole, ketoconazole), antihypertensives (*e.g.*, captopril, bosentan, reserpine), antibiotics (*e.g.*, erythromycin, clarithromycine, rifampin, nafcillin, azithromycin), and proton pump inhibitors (*e.g.*, omeprazole). Certain P-gp inhibitors are typically administered to patients for periods greater than two weeks.

**ANSWER:** Paragraph 73 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that the '809 Patent contains the following text:

> may be involved in drug metabolism. P-gp or CYP3A inducers may include carbamazepine, rifampin, St. John's wort, bosentan, efavirenz, mitotane, modafinil, or nafcillin. P-gp inhibitors may include amiodarone, azithromycin, captopril, carvedilol, clarithromycin, conivaptan, cyclosporine, diltiazem, dronedarone, eliglustat, erythromycin, felodipine, itraconazole, ketoconazole, lapatinib, lopinavir/ritonavir, propafenone, quercetin, quinidine, reserpine, ranolazine, saquinavir, telaprevir, tipranavir, ticagrelor, tacrolimus, and verapamil.

'809 Patent at 85:47-56. Sandoz denies any and all remaining allegations of Paragraph 73.

74. The '809 Patent claims a method of administering relugolix to treat prostate cancer in subjects "in need of co-administration" of a P-gp inhibitor. The claimed method specifies dose separation, wherein the P-gp inhibitor is administered at least six hours apart from the daily 120 mg maintenance dose of relugolix.

**ANSWER:** Paragraph 74 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that the '809 Patent contains the following claim:

22

> 1. A method of treating prostate cancer in a subject in need thereof, the method comprising:
> (i) orally administering a loading dose of 360 mg of N-(4-(1-(2,6-difluorobenzyl)-5-((dimethylamino) methyl)-3-(6-methoxy-3-pyridazinyl)-2,4-dioxo-1,2,3, 4-tetrahydrothieno[2,3-d]pyrimidin-6-yl)phenyl)-N'-methoxyurea to the subject;
> (ii) beginning about one day after administration of the 360 mg loading dose, orally administering a single 120 mg solid preparation of N-(4-(1-(2,6-difluorobenzyl)-5-((dimethylamino)methyl)-3-(6-methoxy-3-pyridazi-nyl)-2,4-dioxo-1,2,3,4-tetrahydrothieno[2,3-d]pyrimi-din-6-yl)phenyl)-N'-methoxyurea to the subject once a day; and
> (iii) co-administering a P-glycoprotein (P-gp) inhibitor to the subject at least six hours after the oral administra-tion of the single 120 mg solid preparation of N-(4-(1-(2,6-difluorobenzyl)-5-((dimethylamino)methyl)-3-(6-methoxy-3-pyridazinyl)-2,4-dioxo-1,2,3,4-tetrahydrothieno[2,3-d]pyrimidin-6-yl)phenyl)-N'-methoxyurea;

> wherein the subject is in need of co-administration of the P-gp inhibitor.

'809 Patent at Claim 1. Sandoz denies any and all remaining allegations of Paragraph 74.

75.    The FDA-approved label for Orgovyx® (Ex. G) embodies the inventions claimed in the '809 Patent. As explained in the FDA-approved label for Orgovyx®, co-administration of relugolix with an oral P-gp inhibitor has been found to increase relugolix exposure. Ex. G at 6. For example, the Orgovyx® label describes a study in which co-administration of relugolix and erythromycin (a P-gp and moderate CYP3A inhibitor) increased the area under the curve (AUC) and Cmax of relugolix by 3.5- and 2.9-fold, respectively. Ex. G at 10. Increased exposure may in turn increase the risk of adverse reactions to relugolix. Ex. G at 6. As the claims of the '809 Patent recite, however, certain patients who are being treated for prostate cancer may be "in need of coadministration" of a P-gp inhibitor. For such patients, instructing on how to avoid adverse reactions when co-administering a P-gp inhibitor is beneficial.

**ANSWER:**    Paragraph 75 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that Exhibit G contains what purports to be the

FDA-approved label for Orgovyx® which states, *inter alia*:

23

> P-gp Inhibitors
> Relugolix is a P-gp substrate. Coadministration of ORGOVYX with an oral P-gp inhibitor increases relugolix exposure *[see Clinical Pharmacology (12.3)]*, which may increase the risk of adverse reactions associated with ORGOVYX.

> *Combined P-gp and Moderate CYP3A Inhibitors:* Co-administration with erythromycin (P-gp and moderate CYP3A inhibitor) increased the AUC and $C_{max}$ of relugolix by 3.5- and 2.9-fold respectively.

Complaint Exhibit G at 6, 10. Sandoz denies any and all remaining allegations of Paragraph 74.

76.    The FDA-approved label for Orgovyx® reflects the inventions claimed in the '809 Patent and specifically instructs use of the claimed dosing regimen, including in sections titled "Drug Interactions," "Dose Modification for Use with P-gp Inhibitors," and "Effect of Other Drugs on ORGOVYX." Ex. G at 1, 2, 6. Although the label states that co-administration of relugolix and a P-gp inhibitor should be avoided and that treatment with relugolix can be interrupted for two weeks if an oral P-gp inhibitor will only be administered for up to two weeks, the label also provides specific instructions for the co-administration of relugolix with a P-gp inhibitor for patients in need of such therapy and certain P-gp inhibitors are typically administered to patients for periods greater than two weeks. Ex. G at 1, 2, 6.

**ANSWER:**    Paragraph 76 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that Exhibit F contains what purports to be the

FDA-approved label for Orgovyx® which states, *inter alia*:

> ------------------------------DRUG INTERACTIONS------------------------------
> P-gp Inhibitors: Avoid co-administration. If unavoidable, take ORGOVYX first, separate dosing by at least 6 hours, and monitor patients more frequently for adverse reactions (2.2, 7.1).
>
> Combined P-gp and Strong CYP3A Inducers: Avoid co-administration. If unavoidable, increase the ORGOVYX dose to 240 mg once daily (2.3, 7.1).

> **2.2 Dosage Modifications for P-gp Inhibitors**
>
> Avoid co-administration of ORGOVYX with oral P-gp inhibitors. If co-administration is unavoidable, take ORGOVYX first and separate dosing by at least 6 hours *[see Drug Interactions (7.1) and Clinical Pharmacology (12.3)]*. Monitor patients for increased adverse reactions.
>
> Treatment with ORGOVYX may be interrupted for up to two weeks if a short course of treatment with a P-gp inhibitor is required. Resume ORGOVYX after the P-gp inhibitor is discontinued. If treatment with ORGOVYX is interrupted for greater than 7 days, restart ORGOVYX with a loading dose of 360 mg on the first day and continue with a dose of 120 mg once daily.

### 7.1 Effect of Other Drugs on ORGOVYX

P-gp Inhibitors
Relugolix is a P-gp substrate. Co-administration of ORGOVYX with an oral P-gp inhibitor increases relugolix exposure *[see Clinical Pharmacology (12.3)]*, which may increase the risk of adverse reactions associated with ORGOVYX.

Avoid co-administration of ORGOVYX with oral P-gp inhibitors.

If co-administration with an oral P-gp inhibitor cannot be avoided, take ORGOVYX first and separate dosing by at least 6 hours. Monitor patients for increased adverse reactions *[see Dosage and Administration (2.2)]*.

Treatment with ORGOVYX may be interrupted for up to two weeks if a short course of treatment with a P-gp inhibitor is required. Resume ORGOVYX after the P-gp inhibitor is discontinued. If treatment with ORGOVYX is interrupted for greater than 7 days, restart ORGOVYX with a loading dose of 360 mg on the first day and continue with a dose of 120 mg once daily.

Combined P-gp and Strong CYP3A Inducers
Relugolix is a P-gp and CYP3A substrate. Co-administration of ORGOVYX with a combined P-gp and strong CYP3A inducer decreases relugolix exposure, which may reduce the effects of ORGOVYX *[see Clinical Pharmacology (12.3)]*.

Avoid co-administration of ORGOVYX with combined P-gp and strong CYP3A inducers. If co-administration cannot be avoided, increase the ORGOVYX dose. After discontinuation of the combined P-gp and strong CYP3A inducer, resume ORGOVYX once daily at the same dose *[see Dosage and Administration (2.3)]*.

Complaint Exhibit G at 1, 2, 6. Sandoz denies any and all remaining allegations of Paragraph 76.

77.    Upon information and belief, because of Sandoz's proposed label, doctors will instruct patients in need of co-administration of the ANDA Product and a P-gp inhibitor to take the ANDA product first and wait at least 6 hours before taking the P-gp inhibitor.

**ANSWER:**    Denied.

78.    Upon information and belief, in so doing, Sandoz will induce direct infringement of the '809 Patent by doctors and patients because Sandoz's marketing of the ANDA Product with its proposed labeling will induce healthcare providers and patients to practice the claimed methods of the '809 Patent, and they will do so based on Sandoz's proposed label.

**ANSWER:**    Denied.

79.    Sandoz has knowledge of the '809 Patent.

**ANSWER:**    Paragraph 79 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that its PIV Notice Letter stated, *inter alia,* that

"[t]he ANDA was submitted under 21 U.S.C. §§ 355(j)(1) and (2)(A), and contains a paragraph IV certification to obtain approval to engage in the commercial manufacture, use or sale of Relugolix Tablets, 120 mg, before the expiration of the 170, 191, 501, 526, 178, 198, and 809 patents, . . . ." Sandoz denies any and all remaining allegations of Paragraph 79.

80.    Sandoz's submission of the Sandoz ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the ANDA Product before the expiration of the '809 Patent constituted an act of infringement of at least claims 1, 3, 5, 9, 12, 19, and 23-29 of the '809 Patent, under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:**    Denied.

81.    Sandoz's commercial manufacture, use, offer for sale, sale and/or importation of the ANDA Product and/or its active ingredient prior to the expiration of the '809 Patent, and Sandoz's inducement of and/or contribution to such conduct, would further infringe at least claims 1, 3, 5, 9, 12, 19, and 23-29 of the '809 Patent, either literally or under the doctrine of equivalents, under 35 U.S.C. §§ 271(a), (b), and/or (c).

**ANSWER:**    Denied.

82.    Upon FDA approval of the Sandoz ANDA, Sandoz will infringe at least claims 1, 3, 5, 9, 12, 19, and 23-29 of the '809 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing the ANDA Product and/or its active ingredient, and/or by actively inducing and contributing to infringement of the '809 Patent by others, including but not limited to healthcare providers and patients, under 35 U.S.C. § 271(a), unless enjoined by the Court. Such infringement is imminent because, among other things, Sandoz has notified Plaintiffs of the submission of Sandoz's ANDA seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the ANDA Product before the expiration of the '809 Patent.

**ANSWER:**    Paragraph 82 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that its PIV Notice Letter stated, *inter alia*, that "[t]he ANDA was submitted under 21 U.S.C. §§ 355(j)(1) and (2)(A), and contains a paragraph IV certification to obtain approval to engage in the commercial manufacture, use or sale of Relugolix Tablets, 120 mg, before the expiration of the 170, 191, 501, 526, 178, 198, and 809 patents, . . . ." Sandoz denies any and all remaining allegations of Paragraph 82.

83.    Upon information and belief, Sandoz will actively induce infringement of at least claims 1, 3, 5, 9, 12, 19, and 23-29 of the '809 Patent under 35 U.S.C. § 271(b) by encouraging

26

others, including but not limited to healthcare providers and patients and, to make, use, offer for sale, sell, or import the ANDA Product in the United States. Upon information and belief, immediately and imminently upon FDA approval of the Sandoz ANDA, Sandoz will intentionally encourage acts of direct infringement by others, including but not limited to healthcare providers and patients, with knowledge of the '809 Patent and with knowledge that its acts are encouraging infringement. For example, marketing the ANDA Product with its proposed labeling will induce healthcare providers and patients to practice the claimed methods of the '809 Patent.

**ANSWER:** Paragraph 83 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that its PIV Notice Letter stated, *inter alia*, that

"[t]he ANDA was submitted under 21 U.S.C. §§ 355(j)(1) and (2)(A), and contains a paragraph

IV certification to obtain approval to engage in the commercial manufacture, use or sale of

Relugolix Tablets, 120 mg, before the expiration of the 170, 191, 501, 526, 178, 198, and 809

patents, . . . ." Sandoz denies any and all remaining allegations of Paragraph 83.

84.     Upon FDA approval of the Sandoz ANDA, Sandoz will contributorily infringe at least claims 1, 3, 5, 9, 12, 19, and 23-29 of the '809 Patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing the ANDA Product and its proposed labeling in the United States. The ANDA Product and its proposed labeling are materials for use in practicing methods claimed in the '809 Patent and constitute a material part of those claims' inventions. Upon information and belief, Sandoz knows that the ANDA Product and its proposed labeling are especially made or adapted for use in infringing the '809 Patent, and that the ANDA Product and its proposed labeling are not a staple article or commodity of commerce suitable for substantial noninfringing use. Upon information and belief, Sandoz plans and intends to, and will, contribute to the infringement of the '809 Patent immediately and imminently upon approval of the Sandoz ANDA.

**ANSWER:** Paragraph 84 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that its PIV Notice Letter stated, *inter alia*, that

"[t]he ANDA was submitted under 21 U.S.C. §§ 355(j)(1) and (2)(A), and contains a paragraph

IV certification to obtain approval to engage in the commercial manufacture, use or sale of

Relugolix Tablets, 120 mg, before the expiration of the 170, 191, 501, 526, 178, 198, and 809

patents, . . . ." Sandoz denies any and all remaining allegations of Paragraph 84.

85.     A substantial and justiciable controversy exists between the parties as to the infringement of the '809 Patent.

**ANSWER:**    Denied.

86.    Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaratory judgment that Sandoz's making, using, offering to sell, selling, and/or importing the ANDA Product, or inducement thereof, will infringe the '809 Patent pursuant to 35 U.S.C. § 271(b).

**ANSWER:**    Denied.

87.    Upon information and belief, Sandoz acted, and upon FDA approval of the Sandoz ANDA, will act, without a reasonable basis for believing that it would not be liable for indirectly infringing the '809 Patent. This is an exceptional case.

**ANSWER:**    Denied.

88.    Unless Sandoz is enjoined from directly or indirectly infringing the '809 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law.

**ANSWER:**    Denied.

## RESPONSE TO "COUNT V: INFRINGEMENT OF U.S. PATENT NO. 12,336,990"

89.    Plaintiffs incorporate each of the preceding paragraphs 1-86 [sic] as if fully set forth herein.

**ANSWER:**    Sandoz incorporates by reference its responses to the preceding Paragraphs 1-88 of the Complaint as if fully set forth herein.

90.    Sandoz's submission of the Sandoz ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the ANDA Product before the expiration of the '990 Patent constituted an act of infringement at least claims 1-2, 4-7, and 15-30 of the '990 Patent, under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:**    Denied.

91.    Sandoz's commercial manufacture, use, offer for sale, sale and/or importation of the ANDA Product and/or its active ingredient prior to expiration of the '990 Patent, and Sandoz's inducement of and/or contribution to such conduct, would further infringe at least claims 1-2, 4-7, and 15-30 of the '990 Patent, either literally or under the doctrine of equivalents, under 35 U.S.C.§§ 271(a), (b), and/or (c).

**ANSWER:**    Denied.

92.    Sandoz knew or should have known of the '990 Patent no later than June 25, 2025, when the '990 Patent was listed in the Orange Book for Orgovyx®. Sandoz knew of the '990 Patent by no later than July 29, 2025, when it was provided with a copy of the '990 Patent by Plaintiffs.

28

**ANSWER:**    Paragraph 92 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that the electronic version of FDA's Orange Book currently lists the '990 patent in connection with Orgovyx® and lists the submission date as June 25, 2025.  Sandoz denies any and all remaining allegations of Paragraph 92.

93.    Upon FDA approval of the Sandoz ANDA, Sandoz will infringe at least claims 1-2, 4-7, and 15-30 of the '990 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing the ANDA Product and/or its active ingredient, and/or by actively inducing and contributing to infringement of the '990 Patent by others, including but not limited to healthcare providers and patients, under 35 U.S.C. § 271(a), unless enjoined by the Court. Such infringement is imminent because, among other things, Sandoz has notified Plaintiffs of the submission of Sandoz's ANDA seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the ANDA Product before the expiration of the '990 Patent.

**ANSWER:**    Paragraph 93 contains legal conclusions for which no answer is required. To the extent an answer is required, Sandoz admits that its PIV Notice Letter stated, *inter alia*, that "[t]he ANDA was submitted under 21 U.S.C. §§ 355(j)(1) and (2)(A), and contains a paragraph IV certification to obtain approval to engage in the commercial manufacture, use or sale of Relugolix Tablets, 120 mg, before the expiration of the 170, 191, 501, 526, 178, 198, and 809 patents, . . . ." Sandoz denies any and all remaining allegations of Paragraph 93.

94.    Upon information and belief, Sandoz will actively induce infringement of at least claims 1-2, 4-7, and 15-30 of the '990 Patent under 35 U.S.C. § 271(b) by encouraging others, including but not limited to healthcare providers and patients, to make, use, offer for sale, sell, or import the ANDA Product in the United States. Upon information and belief, immediately and imminently upon FDA approval of the Sandoz ANDA, Sandoz will intentionally encourage acts of direct infringement by others, including but not limited to healthcare providers and patients, with knowledge of the '990 Patent and with knowledge that its acts are encouraging infringement. For example, marketing the ANDA Product with its proposed labeling will induce healthcare providers and patients to practice the claimed methods of the '990 Patent.

**ANSWER:**    Denied.

95.    Unless enjoined by this Court, upon FDA approval of the Sandoz ANDA, Sandoz will contributorily infringe at least claims 1-2, 4-7, and 15-30 of the '990 Patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing the ANDA Product and its proposed labeling in the United States. The ANDA Product and its proposed labeling are materials for use in practicing methods claimed in the '990 Patent and constitute a material part of those claims'

29

inventions. Upon information and belief, Sandoz knows that the ANDA Product and its proposed labeling are especially made or adapted for use in infringing the '990 Patent, and that the ANDA Product and its proposed labeling are not a staple article or commodity of commerce suitable for substantial noninfringing use. Upon information and belief, Sandoz plans and intends to, and will, contribute to the infringement of the '990 Patent immediately and imminently upon approval of the Sandoz ANDA.

**ANSWER:**   Denied.

96.   A substantial and justiciable controversy exists between the parties as to the infringement of the '990 Patent.

**ANSWER:**   Denied.

97.   Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaratory judgment that Sandoz's making, using, offering to sell, selling, and/or importing the ANDA Product, inducement thereof or contribution thereto, will infringe the '990 Patent pursuant to 35 U.S.C. §§ 271(a), (b), and/or (c).

**ANSWER:**   Denied.

98.   Upon information and belief, Sandoz acted, and upon FDA approval of the Sandoz ANDA, will act, without a reasonable basis for believing that it would not be liable for directly and/or indirectly infringing the '990 Patent. This is an exceptional case.

**ANSWER:**   Denied.

99.   Unless Sandoz is enjoined from directly or indirectly infringing the '990 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law.

**ANSWER:**   Denied.

### RESPONSE TO "COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 10,350,170"

100.   Plaintiffs incorporate each of the preceding paragraphs 1-97 [sic] as if fully set forth herein.

**ANSWER:**   Sandoz incorporates by reference its responses to the preceding Paragraphs

1-99 of the Complaint as if fully set forth herein.

101.   Sandoz's submission of the Sandoz ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the ANDA Product before the expiration of the '170 Patent constituted an act of infringement of at least claim 5 of the '170 Patent, under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:**   Denied.

30

102. Sandoz's commercial manufacture, use, offer for sale, sale and/or importation of the ANDA Product and/or its active ingredient prior to expiration of the '170 Patent, and Sandoz's inducement of and/or contribution to such conduct, would further infringe at least claim 5 of the '170 Patent, either literally or under the doctrine of equivalents, under 35 U.S.C. §§ 271(a), (b), and/or (c).

**ANSWER:** Denied.

103. Upon FDA approval of the Sandoz ANDA, Sandoz will infringe at least claim 5 of the '170 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing the ANDA Product and/or its active ingredient, and/or by actively inducing and contributing to infringement of at least claim 5 of the '170 Patent by others, including but not limited to healthcare providers and patients, under 35 U.S.C. § 271(a), unless enjoined by the Court. Such infringement is imminent because, among other things, Sandoz has notified Plaintiffs of the submission of Sandoz's ANDA seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the ANDA Product before the expiration of the '170 Patent.

**ANSWER:** Paragraph 103 contains legal conclusions for which no answer is required.

To the extent an answer is required, Sandoz admits that its PIV Notice Letter stated, *inter alia*, that

"[t]he ANDA was submitted under 21 U.S.C. §§ 355(j)(1) and (2)(A), and contains a paragraph

IV certification to obtain approval to engage in the commercial manufacture, use or sale of

Relugolix Tablets, 120 mg, before the expiration of the 170, 191, 501, 526, 178, 198, and 809

patents, . . . ." Sandoz denies any and all remaining allegations of Paragraph 103.

104. By way of example, Plaintiffs' Orgovyx® product is an embodiment of at least claim 5 of the '170 Patent. By submitting its ANDA, Sandoz has necessarily represented to the FDA that, upon approval, Sandoz's ANDA Product will have the same active ingredient, dosage form, and strength as Orgovyx®, and will be bioequivalent to Orgovyx®. Each limitation of claim 5 of the '170 Patent is present in the Sandoz ANDA Product either literally or under the doctrine of equivalents. *See* SDZ_RELUG_0077030-SDZ_RELUG-0079428 at SDZ_RELUG_0077036-37. With respect to any claim limitation that is not literally present, the substituted element in the Sandoz ANDA Product performs substantially the same function in substantially the same way with the same results as, and is insubstantially different from, the claimed limitation and is thus equivalent.

**ANSWER:** Paragraph 104 contains legal conclusions for which no answer is required.

To the extent an answer is required, denied.

105. Sandoz will actively induce infringement of at least claim 5 of the '170 Patent under 35 U.S.C. § 271(b) by encouraging others, including but not limited to healthcare providers and

patients, to make, use, offer for sale, sell, or import the ANDA Product in the United States. Immediately and imminently upon FDA approval of the Sandoz ANDA, Sandoz will intentionally encourage acts of direct infringement by others, including but not limited to healthcare providers and patients, with knowledge of the '170 Patent and with knowledge that its acts are encouraging infringement.

**ANSWER:**   Denied.

106.    Upon FDA approval of the Sandoz ANDA, Sandoz will contributorily infringe at least claim 5 of the '170 Patent under 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing the ANDA Product in the United States. The ANDA Product constitutes a material part of the inventions of the claims of the '170 Patent. Upon information and belief, Sandoz knows that the ANDA Product is especially made or adapted for use in infringing the '170 Patent, and that the ANDA Product is not a staple article or commodity of commerce suitable for substantial noninfringing use. Upon information and belief, Sandoz plans and intends to, and will, contribute to the infringement of the '170 Patent immediately and imminently upon approval of the Sandoz ANDA.

**ANSWER:**   Denied.

107.    A substantial and justiciable controversy exists between the parties as to the infringement of the '170 Patent.

**ANSWER:**   Denied.

108.    Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaratory judgment that Sandoz's making, using, offering to sell, selling, and/or importing the ANDA Product will infringe the '170 Patent pursuant to 35 U.S.C. §§ 271(a), (b), and/or (c).

**ANSWER:**   Denied.

109.    Upon information and belief, Sandoz acted, and upon FDA approval of the Sandoz ANDA, will act, without a reasonable basis for believing that it would not be liable for directly and/or indirectly infringing the '170 Patent. This is an exceptional case.

**ANSWER:**   Denied.

110.    Unless Sandoz is enjoined from directly or indirectly infringing the '170 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law.

**ANSWER:**   Denied.

## RESPONSE TO "PRAYER FOR RELIEF"

Sandoz denies all allegations not expressly admitted herein.  Sandoz further denies that

Plaintiffs are entitled to any of the relief requested or to any relief whatsoever.  Sandoz respectfully

requests that the Court: (a) dismiss this action with prejudice; (b) enter judgment in favor of Sandoz; (c) award Sandoz its reasonable attorneys' fees and costs incurred in defending this action pursuant to, *inter alia*, 35 U.S.C. § 285; and, (d) award Sandoz such further relief as the Court deems just and appropriate.

## SEPARATE DEFENSES

Without prejudice to the denials set forth in its Answer, without admitting any allegations in the Complaint not otherwise admitted, and without undertaking any of the burdens imposed by law on the Plaintiffs, Sandoz asserts the following separate defenses:

### First Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Defense

The claims of the '178 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, and/or for double-patenting.

### Third Defense

The manufacture, use, sale, offer for sale, importation, and/or marketing of Sandoz's ANDA Product has not infringed, do not infringe, and would not—if made, used, sold, offered for sale, imported, or marketed—infringe, either directly or indirectly, any valid and/or enforceable claim of the '178 patent, either literally or under the doctrine of equivalents.

### Fourth Defense

Sandoz has not induced, does not induce, and will not induce infringement of any valid and/or enforceable claim of the '178 patent.

33

## Fifth Defense

Sandoz has not contributed, does not contribute, and will not contribute to infringement of any valid and/or enforceable claim of the '178 patent.

## Sixth Defense

The claims of the '714 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, and/or for double-patenting.

## Seventh Defense

The manufacture, use, sale, offer for sale, importation, and/or marketing of Sandoz's ANDA Product has not infringed, do not infringe, and would not—if made, used, sold, offered for sale, imported, or marketed—infringe, either directly or indirectly, any valid and/or enforceable claim of the '714 patent, either literally or under the doctrine of equivalents.

## Eighth Defense

Sandoz has not induced, does not induce, and will not induce infringement of any valid and/or enforceable claim of the '714 patent.

## Ninth Defense

Sandoz has not contributed, does not contribute, and will not contribute to infringement of any valid and/or enforceable claim of the '714 patent.

## Tenth Defense

The claims of the '198 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, and/or for double-patenting.

34

## Eleventh Defense

The manufacture, use, sale, offer for sale, importation, and/or marketing of Sandoz's ANDA Product has not infringed, do not infringe, and would not—if made, used, sold, offered for sale, imported, or marketed—infringe, either directly or indirectly, any valid and/or enforceable claim of the '198 patent, either literally or under the doctrine of equivalents.

## Twelfth Defense

Sandoz has not induced, does not induce, and will not induce infringement of any valid and/or enforceable claim of the '198 patent.

## Thirteenth Defense

Sandoz has not contributed, does not contribute, and will not contribute to infringement of any valid and/or enforceable claim of the '198 patent.

## Fourteenth Defense

The claims of the '809 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, and/or for double-patenting.

## Fifteenth Defense

The manufacture, use, sale, offer for sale, importation, and/or marketing of Sandoz's ANDA Product has not infringed, do not infringe, and would not—if made, used, sold, offered for sale, imported, or marketed—infringe, either directly or indirectly, any valid and/or enforceable claim of the '809 patent, either literally or under the doctrine of equivalents.

## Sixteenth Defense

Sandoz has not induced, does not induce, and will not induce infringement of any valid and/or enforceable claim of the '809 patent.

35

**Seventeenth Defense**

Sandoz has not contributed, does not contribute, and will not contribute to infringement of any valid and/or enforceable claim of the '809 patent.

**Eighteenth Defense**

The claims of the '990 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, and/or for double-patenting.

**Nineteenth Defense**

The manufacture, use, sale, offer for sale, importation, and/or marketing of Sandoz's ANDA Product has not infringed, do not infringe, and would not—if made, used, sold, offered for sale, imported, or marketed—infringe, either directly or indirectly, any valid and/or enforceable claim of the '990 patent, either literally or under the doctrine of equivalents.

**Twentieth Defense**

Sandoz has not induced, does not induce, and will not induce infringement of any valid and/or enforceable claim of the '990 patent.

**Twenty First Defense**

Sandoz has not contributed, does not contribute, and will not contribute to infringement of any valid and/or enforceable claim of the '990 patent.

**Twenty Second Defense**

The claims of the '170 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, and/or for double-patenting.

36

### Twenty Third Defense

The manufacture, use, sale, offer for sale, importation, and/or marketing of Sandoz's ANDA Product has not infringed, do not infringe, and would not—if made, used, sold, offered for sale, imported, or marketed—infringe, either directly or indirectly, any valid and/or enforceable claim of the '170 patent, either literally or under the doctrine of equivalents.

### Twenty Fourth Defense

Sandoz has not induced, does not induce, and will not induce infringement of any valid and/or enforceable claim of the '170 patent.

### Twenty Fifth Defense

Sandoz has not contributed, does not contribute, and will not contribute to infringement of any valid and/or enforceable claim of the '170 patent.

### Twenty Sixth Defense

The Court lacks subject lacks subject matter jurisdiction over any and all claims asserted under 35 U.S.C. § 271(a), (b), and/or (c).

### Twenty Seventh Defense

The Complaint fails to state a claim for willful infringement and/or exceptional case.

### Twenty Eighth Defense

Any additional defenses or counterclaims that discovery may reveal, including unenforceability.

### COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff Sandoz Inc. ("Sandoz"), for its Counterclaims against Plaintiffs/Counterclaim-Defendants Sumitomo Pharma Switzerland GmbH, Sumitomo Pharma America, Inc., Sumitomo Pharma Company Limited (collectively, "Sumitomo"), Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals International AG (collectively,

37

"Takeda"), and Pfizer Inc. ("Pfizer), (collectively, "Counterclaim-Defendants"), alleges as follows.

**The Parties**

1. Sandoz is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 100 College Road West, Princeton, New Jersey 08540.

2. Counterclaim-Defendant Sumitomo Pharma Switzerland GmbH ("SMPS") purports to be a corporation organized and existing under the laws of Switzerland, with its principal place of business at Aeschengraben 27, 4051 Basel, Switzerland.

3. Counterclaim-Defendant Sumitomo Pharma America, Inc. ("SMPA") purports to be a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 84 Waterford Drive, Marlborough, MA 01752.

4. Counterclaim-Defendant Sumitomo Pharma Company Limited ("SMP") purports to be a corporation organized and existing under the laws of Japan, with its principal place of business at 6-8, Doshomachi 2-chome, Chuo-ku, Osaka-shi, Osaka 541-0045, Japan.

5. Counterclaim-Defendant Takeda Pharmaceutical Company Limited ("Takeda") purports to be a corporation organized and existing under the laws of Japan, with its principal place of business at 1-1, Doshomachi 4-chome, Chuo-ku, Osaka 540-8645, Japan.

6. Counterclaim-Defendant Takeda Pharmaceuticals International AG ("Takeda International") purports to be a corporation organized and existing under the laws of Switzerland, with its principal place of business at Thurgauerstrasse 130, Glattpark-Opfikon, Zurich, 8152, Switzerland.

7. Counterclaim-Defendant Pfizer Inc. ("Pfizer") purports to be a corporation organized and existing under the laws of the State of Delaware and with its principal place of business at 66 Hudson Boulevard East, New York, New York 10001.

### Jurisdiction and Venue

8. These Counterclaims arise under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*; the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2066 (2003) ("MMA") (21 U.S.C. § 355(j) and 35 U.S.C. § 271(e)(5)).

9. This Court has original jurisdiction over the subject matter of these Counterclaims under 28 U.S.C. §§ 1331 and 1338(a); under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and under the MMA (21 U.S.C. § 355(j) and 35 U.S.C. § 271(e)(5)).

10. This Court has personal jurisdiction over Counterclaim-Defendants because Counterclaim-Defendants have availed themselves of the rights and privileges—and subjected themselves to the jurisdiction—of this forum by suing Sandoz in this District, and/or because Counterclaim-Defendants conduct substantial business in, and have regular systemic contact with, this District.

11. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

### Orgovyx®

12. According to the United States Food and Drug Administration's ("FDA") website, "SUMITOMO PHARMA AMERICA INC" is the holder of NDA No. 214621 for Orgovyx®, relugolix tablets 120 mg strength.

13. At the time the Complaint in this action ("the Complaint") was filed, the electronic version of U.S. Food and Drug Administration's ("FDA") publication, *Approved Drug Products*

*with Therapeutic Equivalence Evaluations* (a/k/a FDA's Orange Book) ("Orange Book") listed, in relevant part, United States Patent Nos. 11,795,178 ("the '178 patent"), 12,325,714 ("the '714 patent"), 12,097,198 ("the '198 patent"), 12,144,809 ("the '809 patent"), 12,336,990 ("the '990 patent"), and 10,350,170 ("the '170 patent") in connection with NDA No. 214621.

14.　The electronic version of FDA's Orange Book lists the "Submission Date" for the '178 patent as October 25, 2023.

15.　The electronic version of FDA's Orange Book lists the "Submission Date" for the '714 patent as June 11, 2025.

16.　The electronic version of FDA's Orange Book lists the "Submission Date" for the '198 patent as September 25, 2024.

17.　The electronic version of FDA's Orange Book lists the "Submission Date" for the '809 patent as November 21, 2024.

18.　The electronic version of FDA's Orange Book lists the "Submission Date" for the '990 patent as June 25, 2025.

19.　The electronic version of FDA's Orange Book lists the "Submission Date" for the '170 patent as January 14, 2021.

### *U.S. Patent No. 11,795,178*

20.　On or about October 24, 2023, the PTO issued the '178 patent, entitled "Compositions of Thienopyrimidine Derivatives."

21.　The face of the '178 patent identifies Koichiro Fukuoka, Kazuhiro Miwa, Tsuyoshi Sasaki, and Fumiya Komura as the purported inventors.

22.　The face of the '178 patent identifies Takeda Pharmaceutical Company Limited as the purported assignee.

23.    By listing the '178 patent in the Orange Book, Counterclaim-Defendants maintain that an infringement suit could reasonably be asserted against any generic ANDA applicant—including Sandoz—that attempts to seek approval for, and market, a generic version of Orgovyx® before patent expiration.

<u>U.S. Patent No. 12,325,714</u>

24.    On or about June 10, 2025, the PTO issued the '714 patent, entitled "Compositions of Thienopyrimidine Derivatives."

25.    The face of the '714 patent identifies Kazuhiro Miwa as the purported inventor.

26.    The face of the '714 patent identifies Takeda Pharmaceutical Company Limited as the purported assignee.

27.    By listing the '714 patent in the Orange Book, Counterclaim-Defendants maintain that an infringement suit could reasonably be asserted against any generic ANDA applicant—including Sandoz—that attempts to seek approval for, and market, a generic version of Orgovyx® before patent expiration.

<u>U.S. Patent No. 12,097,198</u>

28.    On or about September 24, 2024, the PTO issued the '198 patent, entitled "Treatment of Prostate Cancer."

29.    The face of the '198 patent identifies Vijaykumar Reddy Rajasekhar, Brendan Mark Johnson, David B. Maclean, Lynn Seely, Paul N. Mudd Jr., and Hélène M. Faessel as the purported inventors.

30.    The face of the '198 patent identifies Sumitomo Pharma Switzerland GmbH and Takeda Pharmaceutical Company Limited as the purported assignees.

31.    By listing the '198 patent in the Orange Book, Counterclaim-Defendants maintain that an infringement suit could reasonably be asserted against any generic ANDA applicant—

including Sandoz—that attempts to seek approval for, and market, a generic version of Orgovyx®
before patent expiration.

<u>U.S. Patent No. 12,144,809</u>

32.    On or about November 19, 2024, the PTO issued the '809 patent, entitled
"Treatment of Prostate Cancer."

33.    The face of the '809 patent identifies Vijaykumar Reddy Rajasekhar, Brendan Mark
Johnson, David B. Maclean, Lynn Seely, Paul N. Mudd Jr., and Hélène M. Faessel as the purported
inventors.

34.    The face of the '809 patent identifies Sumitomo Pharma Switzerland GmbH and
Takeda Pharmaceutical Company Limited as the purported assignees.

35.    By listing the '809 patent in the Orange Book, Counterclaim-Defendants maintain
that an infringement suit could reasonably be asserted against any generic ANDA applicant—
including Sandoz—that attempts to seek approval for, and market, a generic version of Orgovyx®
before patent expiration.

<u>U.S. Patent No. 12,336,990</u>

36.    On or about June 24, 2025, the PTO issued the '990 patent, entitled "Treatment of
Prostate Cancer."

37.    The face of the '990 patent identifies Vijaykumar Reddy Rajasekhar, Brendan Mark
Johnson, David B. Maclean, Lynn Seely, Paul N. Mudd Jr., and Hélène M. Faessel as the purported
inventors.

38.    The face of the '990 patent identifies Sumitomo Pharma Switzerland GmbH and
Takeda Pharmaceutical Company Limited as the purported assignees.

39.    By listing the '990 patent in the Orange Book, Counterclaim-Defendants maintain
that an infringement suit could reasonably be asserted against any generic ANDA applicant—

including Sandoz—that attempts to seek approval for, and market, a generic version of Orgovyx® before patent expiration.

*U.S. Patent No. 10,350,170*

40.    On or about July 16, 2019, the PTO issued the '170 patent, entitled "Solid Preparation."

41.    The face of the '170 patent identifies Ikuro Yamane, Yukihiro Nomura, Yutaka Nishimoto, and Wataru Hoshina as the purported inventors.

42.    The face of the '170 patent identifies Takeda Pharmaceutical Company Limited as the purported assignee.

43.    By listing the '170 patent in the Orange Book, Counterclaim-Defendants maintain that an infringement suit could reasonably be asserted against any generic ANDA applicant— including Sandoz—that attempts to seek approval for, and market, a generic version of Orgovyx® before patent expiration.

**Sandoz's ANDA Product**

44.    Sandoz has filed ANDA No. 219913 ("Sandoz's ANDA") with the FDA.

45.    Because Sandoz's ANDA seeks FDA approval to engage in the commercial manufacture, use or sale of 120 mg tablets of relugolix (collectively, "Sandoz's ANDA Product") prior to the expiration of the '178, '714, '198, '809, and '990 patents, Sandoz's ANDA includes a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) to the '178, '714, '198, '809, and '990 patents.

46.    On September 23, 2025, Plaintiffs filed the Complaint in the above-captioned action (originally D.I. 1 in C.A. No. 25-970, filed August 1, 2025) asserting infringement of the '178, '714, '198, '809, and '990 patents.

## COUNT I

### Declaration of Noninfringement of the '178 Patent

47.    Sandoz realleges and incorporates by reference the allegations in the preceding Paragraphs as if fully set forth herein.

48.    A present, genuine, and justiciable controversy exists between Counterclaim-Defendants and Sandoz regarding, *inter alia*, whether the manufacture, use, offer for sale, sale or importation of Sandoz's ANDA Product would infringe any valid and enforceable claim of the '178 patent.

49.    The manufacture, use, offer for sale, sale, or importation of Sandoz's ANDA Product would not directly or indirectly infringe any valid and enforceable claim of the '178 patent, either literally or under the doctrine of equivalents.

50.    Sandoz is entitled to a judicial declaration that the manufacture, use, offer for sale, sale, or importation of Sandoz's ANDA Product would not infringe any valid and enforceable claim of the '178 patent.

## COUNT II

### Declaration of Invalidity of the '178 Patent

51.    Sandoz realleges and incorporates by reference the allegations in the preceding Paragraphs as if fully set forth herein.

52.    A present, genuine, and justiciable controversy exists between Counterclaim-Defendants and Sandoz regarding, *inter alia*, the invalidity of the '178 patent.

53.    The '178 patent describes and claims an alleged invention, the making of which did not involve the inventive faculty but only the obvious judgment, knowledge, and mechanical skill possessed by persons having ordinary skill in the art to which the alleged invention pertains.

54.    The alleged invention of the '178 patent does no more than combine familiar elements according to known methods to yield predictable results. Any alleged improvement over the prior art set forth in the '178 patent is not more than the predictable use of prior art elements according to their established functions. A person of skill in the art would have been motivated to combine the teachings of the prior art to achieve the alleged invention of the '178 patent and would have had a reasonable expectation of success in doing so.

55.    The subject matter claimed in the '178 patent fails to comply with 35 U.S.C. § 103 in that the differences between the subject matter claimed in the patent and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

56.    Sandoz is entitled to a judicial declaration that the claims of the '178 patent are invalid for failure to satisfy one or more of the conditions for patentability in Title 35 of the United States Code.

## COUNT III

### Declaration of Noninfringement of the '714 Patent

57.    Sandoz realleges and incorporates by reference the allegations in the preceding Paragraphs as if fully set forth herein.

58.    A present, genuine, and justiciable controversy exists between Counterclaim-Defendants and Sandoz regarding, *inter alia*, whether the manufacture, use, offer for sale, sale or importation of Sandoz's ANDA Product would infringe any valid and enforceable claim of the '714 patent.

45

59.    The manufacture, use, offer for sale, sale, or importation of Sandoz's ANDA Product would not directly or indirectly infringe any valid and enforceable claim of the '714 patent, either literally or under the doctrine of equivalents.

60.    Sandoz is entitled to a judicial declaration that the manufacture, use, offer for sale, sale, or importation of Sandoz's ANDA Product would not infringe any valid and enforceable claim of the '714 patent.

<strong><u>COUNT IV</u></strong>

<strong><u>Declaration of Invalidity of the '714 Patent</u></strong>

61.    Sandoz realleges and incorporates by reference the allegations in the preceding Paragraphs as if fully set forth herein.

62.    A present, genuine, and justiciable controversy exists between Counterclaim-Defendants and Sandoz regarding, *inter alia*, the invalidity of the '714 patent.

63.    The '714 patent describes and claims an alleged invention, the making of which did not involve the inventive faculty but only the obvious judgment, knowledge, and mechanical skill possessed by persons having ordinary skill in the art to which the alleged invention pertains.

64.    The alleged invention of the '714 patent does no more than combine familiar elements according to known methods to yield predictable results.  Any alleged improvement over the prior art set forth in the '714 patent is not more than the predictable use of prior art elements according to their established functions.  A person of skill in the art would have been motivated to combine the teachings of the prior art to achieve the alleged invention of the '714 patent and would have had a reasonable expectation of success in doing so.

65.    The subject matter claimed in the '714 patent fails to comply with 35 U.S.C. § 103 in that the differences between the subject matter claimed in the patent and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged invention was

46

made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

66.     Sandoz is entitled to a judicial declaration that the claims of the '714 patent are invalid for failure to satisfy one or more of the conditions for patentability in Title 35 of the United States Code.

## COUNT V

### Declaration of Noninfringement of the '198 Patent

67.     Sandoz realleges and incorporates by reference the allegations in the preceding Paragraphs as if fully set forth herein.

68.     A present, genuine, and justiciable controversy exists between Counterclaim-Defendants and Sandoz regarding, *inter alia*, whether the manufacture, use, offer for sale, sale or importation of Sandoz's ANDA Product would infringe any valid and enforceable claim of the '198 patent.

69.     The manufacture, use, offer for sale, sale, or importation of Sandoz's ANDA Product would not directly or indirectly infringe any valid and enforceable claim of the '198 patent, either literally or under the doctrine of equivalents.

70.     Sandoz is entitled to a judicial declaration that the manufacture, use, offer for sale, sale, or importation of Sandoz's ANDA Product would not infringe any valid and enforceable claim of the '198 patent.

## COUNT VI

### Declaration of Invalidity of the '198 Patent

71.     Sandoz realleges and incorporates by reference the allegations in the preceding Paragraphs as if fully set forth herein.

72.    A present, genuine, and justiciable controversy exists between Counterclaim-Defendants and Sandoz regarding, *inter alia*, the invalidity of the '198 patent.

73.    The '198 patent describes and claims an alleged invention, the making of which did not involve the inventive faculty but only the obvious judgment, knowledge, and mechanical skill possessed by persons having ordinary skill in the art to which the alleged invention pertains.

74.    The alleged invention of the '198 patent does no more than combine familiar elements according to known methods to yield predictable results.  Any alleged improvement over the prior art set forth in the '198 patent is not more than the predictable use of prior art elements according to their established functions.  A person of skill in the art would have been motivated to combine the teachings of the prior art to achieve the alleged invention of the '198 patent and would have had a reasonable expectation of success in doing so.

75.    The subject matter claimed in the '198 patent fails to comply with 35 U.S.C. § 103 in that the differences between the subject matter claimed in the patent and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

76.    Sandoz is entitled to a judicial declaration that the claims of the '198 patent are invalid for failure to satisfy one or more of the conditions for patentability in Title 35 of the United States Code.

### COUNT VII

### Declaration of Noninfringement of the '809 Patent

77.    Sandoz realleges and incorporates by reference the allegations in the preceding Paragraphs as if fully set forth herein.

48

78.    A present, genuine, and justiciable controversy exists between Counterclaim-Defendants and Sandoz regarding, *inter alia*, whether the manufacture, use, offer for sale, sale or importation of Sandoz's ANDA Product would infringe any valid and enforceable claim of the '809 patent.

79.    The manufacture, use, offer for sale, sale, or importation of Sandoz's ANDA Product would not directly or indirectly infringe any valid and enforceable claim of the '809 patent, either literally or under the doctrine of equivalents.

80.    Sandoz is entitled to a judicial declaration that the manufacture, use, offer for sale, sale, or importation of Sandoz's ANDA Product would not infringe any valid and enforceable claim of the '809 patent.

## COUNT VIII

### Declaration of Invalidity of the '809 Patent

81.    Sandoz realleges and incorporates by reference the allegations in the preceding Paragraphs as if fully set forth herein.

82.    A present, genuine, and justiciable controversy exists between Counterclaim-Defendants and Sandoz regarding, *inter alia*, the invalidity of the '809 patent.

83.    The '809 patent describes and claims an alleged invention, the making of which did not involve the inventive faculty but only the obvious judgment, knowledge, and mechanical skill possessed by persons having ordinary skill in the art to which the alleged invention pertains.

84.    The alleged invention of the '809 patent does no more than combine familiar elements according to known methods to yield predictable results.  Any alleged improvement over the prior art set forth in the '809 patent is not more than the predictable use of prior art elements according to their established functions.  A person of skill in the art would have been motivated to

combine the teachings of the prior art to achieve the alleged invention of the '809 patent and would have had a reasonable expectation of success in doing so.

85.    The subject matter claimed in the '809 patent fails to comply with 35 U.S.C. § 103 in that the differences between the subject matter claimed in the patent and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

86.    Sandoz is entitled to a judicial declaration that the claims of the '809 patent are invalid for failure to satisfy one or more of the conditions for patentability in Title 35 of the United States Code.

## COUNT IX

### Declaration of Noninfringement of the '990 Patent

87.    Sandoz realleges and incorporates by reference the allegations in the preceding Paragraphs as if fully set forth herein.

88.    A present, genuine, and justiciable controversy exists between Counterclaim-Defendants and Sandoz regarding, *inter alia*, whether the manufacture, use, offer for sale, sale or importation of Sandoz's ANDA Product would infringe any valid and enforceable claim of the '990 patent.

89.    The manufacture, use, offer for sale, sale, or importation of Sandoz's ANDA Product would not directly or indirectly infringe any valid and enforceable claim of the '990 patent, either literally or under the doctrine of equivalents.

90.    Sandoz is entitled to a judicial declaration that the manufacture, use, offer for sale, sale, or importation of Sandoz's ANDA Product would not infringe any valid and enforceable claim of the '990 patent.

50

## COUNT X

### Declaration of Invalidity of the '990 Patent

91.     Sandoz realleges and incorporates by reference the allegations in the preceding Paragraphs as if fully set forth herein.

92.     A present, genuine, and justiciable controversy exists between Counterclaim-Defendants and Sandoz regarding, *inter alia*, the invalidity of the '990 patent.

93.     The '990 patent describes and claims an alleged invention, the making of which did not involve the inventive faculty but only the obvious judgment, knowledge, and mechanical skill possessed by persons having ordinary skill in the art to which the alleged invention pertains.

94.     The alleged invention of the '990 patent does no more than combine familiar elements according to known methods to yield predictable results.  Any alleged improvement over the prior art set forth in the '990 patent is not more than the predictable use of prior art elements according to their established functions.  A person of skill in the art would have been motivated to combine the teachings of the prior art to achieve the alleged invention of the '990 patent and would have had a reasonable expectation of success in doing so.

95.     The subject matter claimed in the '990 patent fails to comply with 35 U.S.C. § 103 in that the differences between the subject matter claimed in the patent and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

96.     Sandoz is entitled to a judicial declaration that the claims of the '990 patent are invalid for failure to satisfy one or more of the conditions for patentability in Title 35 of the United States Code.

## COUNT XI

### Declaration of Noninfringement of the '170 Patent

97.     Sandoz realleges and incorporates by reference the allegations in the preceding Paragraphs as if fully set forth herein.

98.     A present, genuine, and justiciable controversy exists between Counterclaim-Defendants and Sandoz regarding, inter alia, whether the manufacture, use, offer for sale, sale or importation of Sandoz's ANDA Product would infringe any valid and enforceable claim of the '170 patent.

99.     The manufacture, use, offer for sale, sale, or importation of Sandoz's ANDA Product would not directly or indirectly infringe any valid and enforceable claim of the '990 patent, either literally or under the doctrine of equivalents.

100.    Sandoz is entitled to a judicial declaration that the manufacture, use, offer for sale, sale, or importation of Sandoz's ANDA Product would not infringe any valid and enforceable claim of the '170 patent.

## COUNT XII

### Declaration of Invalidity of the '170 Patent

101.    Sandoz realleges and incorporates by reference the allegations in the preceding Paragraphs as if fully set forth herein.

102.    A present, genuine, and justiciable controversy exists between Counterclaim-Defendants and Sandoz regarding, inter alia, the invalidity of the '170 patent.

103.    The '170 patent describes and claims an alleged invention, the making of which did not involve the inventive faculty but only the obvious judgment, knowledge, and mechanical skill possessed by persons having ordinary skill in the art to which the alleged invention pertains.

52

104.    The alleged invention of the '170 patent does no more than combine familiar elements according to known methods to yield predictable results. Any alleged improvement over the prior art set forth in the '170 patent is not more than the predictable use of prior art elements according to their established functions. A person of skill in the art would have been motivated to combine the teachings of the prior art to achieve the alleged invention of the '170 patent and would have had a reasonable expectation of success in doing so.

105.    The subject matter claimed in the '170 patent fails to comply with 35 U.S.C. § 103 in that the differences between the subject matter claimed in the patent and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

106.    Sandoz is entitled to a judicial declaration that the claims of the '170 patent are invalid for failure to satisfy one or more of the conditions for patentability in Title 35 of the United States Code.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Sandoz respectfully requests that this Court enter a Judgment and Order in its favor and against Plaintiffs/Counterclaim-Defendants as follows:

(a)    declaring that the manufacture, sale, offer for sale, use or importation of Sandoz's ANDA Products does not and will not infringe (either literally or under the doctrine of equivalents), directly or indirectly (either by inducement or contributorily), any valid and enforceable claim of the '178 patent;

(b)    declaring that the claims of the '178 patent are invalid;

(c)    declaring that the manufacture, sale, offer for sale, use or importation of Sandoz's ANDA Products does not and will not infringe (either literally or under the doctrine

53

of equivalents), directly or indirectly (either by inducement or contributorily), any valid and enforceable claim of the '714 patent;

(d)    declaring that the claims of the '714 patent are invalid;

(e)    declaring that the manufacture, sale, offer for sale, use or importation of Sandoz's ANDA Products does not and will not infringe (either literally or under the doctrine of equivalents), directly or indirectly (either by inducement or contributorily), any valid and enforceable claim of the '198 patent;

(f)    declaring that the claims of the '198 patent are invalid;

(g)    declaring that the manufacture, sale, offer for sale, use or importation of Sandoz's ANDA Products does not and will not infringe (either literally or under the doctrine of equivalents), directly or indirectly (either by inducement or contributorily), any valid and enforceable claim of the '809 patent;

(h)    declaring that the claims of the '809 patent are invalid;

(i)    declaring that the manufacture, sale, offer for sale, use or importation of Sandoz's ANDA Products does not and will not infringe (either literally or under the doctrine of equivalents), directly or indirectly (either by inducement or contributorily), any valid and enforceable claim of the '990 patent;

(j)    declaring that the claims of the '990 patent are invalid;

(k)    declaring that the manufacture, sale, offer for sale, use or importation of Sandoz's ANDA Products does not and will not infringe (either literally or under the doctrine of equivalents), directly or indirectly (either by inducement or contributorily), any valid and enforceable claim of the '170 patent;

(l)    declaring that the claims of the '170 patent are invalid;

54

(m)     ordering that the Complaint be dismissed with prejudice and judgment entered in

favor of Sandoz;

(n)     declaring that this is an exceptional case under 35 U.S.C. § 285 and awarding

Sandoz its attorneys' fees, costs, and expenses in this action; and

(o)     awarding Sandoz any further and additional relief as the Court deems just and

proper.

|  |  |
|---|---|
| OF COUNSEL: | HEYMAN ENERIO<br>GATTUSO & HIRZEL LLP |
| William A. Rakoczy<br>Rachel Pernic Waldron<br>Steven J. Birkos<br>Alejandro V. Hernandez<br>Kelly J. Baker<br>RAKOCZY MOLINO<br>MAZZOCHI SIWIK LLP<br>6 W. Hubbard St., Suite 500<br>Chicago, IL 60654<br>(312) 222-6301<br>wrakoczy@rmmslegal.com<br>rwaldron@rmmslegal.com<br>sbirkos@rmmslegal.com<br>ahernandez@rmmslegal.com<br>kbaker@rmmslegal.com | */s/ Dominick T. Gattuso*<br>Dominick T. Gattuso (# 3630)<br>222 Delaware Avenue, Suite 900<br>Wilmington, DE 19801<br>(302) 472-7300<br>dgattuso@hegh.law<br><br>*Attorneys for Defendant Sandoz Inc.* |

Dated: March 13, 2026